**In the Matter of Allen Robert THAYER.**

No. 49S00–9806–DI–376.

Supreme Court of Indiana.

April 3, 2001.

subsequently been called into doubt. It acted wrongly under a valid statute.

Kevin P. McGoff, Indianapolis, IN, for the Respondent.

Donald R. Lundberg, Executive Secretary, Seth T. Pruden, Staff Attorney, Indianapolis, IN, for the Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

### PER CURIAM

Attorney Allen Robert Thayer represented the victim of a crime he himself was charged with committing. For that, along with charging an unreasonable legal fee in an unrelated matter, we find that Respondent Thayer should be suspended from the practice of law.

This case is now before us for final resolution upon the hearing officer's findings of fact and conclusions of law. Pursuant to Ind. Admission and Discipline Rule 23(15), the respondent has petitioned us for review of those findings and conclusions, arguing that the hearing officer improperly found that the respondent's advising police that he represented the alleged crime victim constituted an impermissible conflict of interest. Because of the respondent's petition, our review of this matter is *de novo* in nature and will involve a review of the entire record presented. *Matter of Warrum*, 724 N.E.2d 1097 (Ind.2000).

Within that review framework, with respect to Count I of the Commission's complaint we now find that in 1995, the respondent was a part-time deputy prosecutor in Tippecanoe County, Indiana. In the late night hours of August 11, 1995, the respondent's girlfriend accused him of battering her. The girlfriend's statement to a police officer prompted the respondent's arrest that night on preliminary charges of domestic battery. A few hours later, the respondent posted bail. He was later terminated from his employment as a deputy prosecutor. The criminal charges were eventually dismissed.

Two days after the respondent's arrest, the police officer spoke with the girlfriend. Although she promised to come to the police station the next day to provide a statement, she failed to do so. On the evening of August 18, 1995, the police officer went to the residence the respondent shared with the girlfriend to get a taped statement from her. The respondent spoke to the officer, advising him that the girlfriend was not there but that he would have her call the officer. Later that same evening, the respondent called the police officer and left a message for the officer to return the call. When the officer returned the call, the following conversation ensued:

Respondent: Hello.

Officer: Yes, this is Officer [ ] of the West Lafayette Police Department. Is Mr. Thayer there?

Respondent: Yes, officer. This is Robert Thayer.

Officer: Yes. I'm returning your call.

Respondent: Yes, thank you. I need to advise you that I'm [the grirlfriend's] attorney along with [another attorney]. Any statements that you'd like to take from her would be, be arranged in his office. Okay sir?

Officer: Uh, so she won't speak to me at all, correct?

Respondent: That's correct sir.

Officer: Okay, do you know how to spell [the other attorney's] last name?

Respondent: Certainly. [ ]. His phone number, [ ].

Officer: Thank you sir.

Respondent: Thank you.

The Commission charged the respondent with violating Ind. Professional Conduct Rule 1.7(b), which provides in relevant part:

A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation.

The respondent argues that there can be no finding of an impermissible conflict of interest because he did not represent the girlfriend with regard to the battery incident. The respondent further contends that he did not intend for the police officer to interpret his statement as meaning that the respondent represented the girlfriend in the battery case, but only that he represented her on some other matters.

At hearing, it was established that the respondent did represent his girlfriend on several other legal matters, including an eviction, a foreclosure, some child custody issues, a bankruptcy, a workers compensation claim, an AFDC matter, and a social security matter. The representations began after the respondent and the girlfriend established a romantic relationship.

The record also reveals that soon after the respondent's arrest, the girlfriend contacted the other lawyer (the one mentioned in the respondent's telephone conversation with the police officer) to assist her in matters regarding the respondent's arrest and preliminary charges, given that the incident had generated a fair amount of local media attention.

The threshold question presented is whether the respondent represented the girlfriend with regard to the battery incident such as to invoke the conflict of interest provision contained in Ind. Professional Conduct Rule 1.7(b). As the respondent points out in his brief, in the absence of an express employment agreement between attorney and client, this Court has held that attorney-client relationships may nonetheless be implied by the conduct of the parties. *Matter of Anonymous,* 655 N.E.2d 67, 70 (Ind.1995) (other citations omitted). Such a relationship exists only after both attorney and client have consented to its formation. *Id.* For example, an attorney-client relationship may be implied where a person seeks advice or assistance from an attorney where the advice sought pertains to matters within the attorney's professional competence, and where the attorney gives the desired advice or assistance. *Id.* (other citations omitted).

The record in this case reveals that the girlfriend told the respondent and police

that she did not want to be questioned directly by the police.[1] In response, the respondent contacted the police, identified himself as the girlfriend's lawyer, and advised them not to question the girlfriend directly. We find that sequence of events sufficient to establish that the girlfriend sought the assistance of the respondent in matters within the respondent's professional competency, and that the respondent in turn provided to her that assistance even though the respondent, due to the obvious conflict, was precluded from providing that assistance. The content of the respondent's conversation with the police officer reflects that attorney-client relationship.

The respondent's argument that, in his conversation with the police officer, he meant only to assert that he was the girlfriend's lawyer on other matters is disingenuous. His statement that he was her lawyer had relevance within the context of that phone conversation only if it was intended to mean that he was her lawyer with regard to the battery incident, insofar as he was seeking to stanch police questioning of her about it.

■ We find further that the respondent engaged in an impermissible conflict of interest. Clearly, since the preliminary criminal charges were leveled against the respondent himself, he was precluded from representing the alleged victim due to the overwhelming risk that the respondent could manipulate the investigation in his favor, especially given the fact that he was serving as a deputy prosecutor at that time.[2] Accordingly, we find that he violated Prof.Cond.R. 1.7(b).

■ Under Count II, we find that the respondent agreed to prosecute a personal injury claim on behalf of a client pursuant

---

1. In this regard, portions of the respondent's testimony at trial of this matter are illustrative:

   Respondent's counsel: . . . was there any further discussion between you and [the girlfriend], if you remember, about whether she wanted to communicate with police officers or prosecutors, for that matter?

   Respondent: She told me on numerous occasions that she felt the police were harassing her, she didn't like [the] special prosecutor, that she was tired of being bothered and wanted to be left alone . . .

   . . .

   [she] expressly told me she wanted no contact with the police or special prosecutor . . ., so my intent was to relay that.
   Tr. pp. 87–88, 112.
   Portions of the girlfriend's testimony indicate that she sought his legal advice:

   Girlfriend: . . . I hadn't been to court like that before. I didn't know what was going on with—how to protect myself and how to—I don't know.
   Commission: Protect yourself from what?
   Girlfriend: Just from all the legal stuff and officers calling me. I just felt I needed an attorney. I don't understand a lot of things.

   Commission: At the time you didn't understand these things, your housemate was Robert Thayer; is that correct?
   Girlfriend: Yes.
   Commission: You didn't discuss these things with him?
   Girlfriend: Well, yes, we discussed things, but I didn't still, like, comprehend, understanding everything. I don't.
   Commission: Was he not able to explain it to you?
   Girlfriend: No, he was able to explain things to me, but for me to really understand it, I didn't.
   Tr. pp. 36–37.

2. We note that under Prof.Cond.R. 1.7(b), even where a conflict exists, a lawyer may nonetheless provide representation as long as the lawyer reasonably believes the representation will not be adversely affected and the client consents after consultation. However, it is hard to imagine a circumstance where any lawyer could reasonably believe there would be no adverse effect attendant to the lawyer's representation of the victim of an alleged crime the lawyer is charged with committing.

to a written contingency fee agreement providing for a fee of ⅓ of the recovery in the event no suit was filed, and 40% if a suit was filed. Ultimately, the respondent filed suit, after which the defendant's insurer offered to settle for $11,000. The client advised the respondent that the settlement offer was satisfactory. On the day of the settlement, the respondent presented the client with a new written fee agreement which provided that the respondent would receive 50% of the settlement, instead of the 40% he initially agreed to. He told the client that the additional 10% was to prevent the medical provider or others from attaching the proceeds. The client signed the new agreement in order to obtain her portion of the settlement proceeds, even though the respondent did not provide the client the opportunity to seek the advice of independent counsel regarding the revision of the fee agreement. Once settlement was obtained, the respondent retained 50% as his fee.

Indiana Professional Conduct Rule 1.8(a) provides, in relevant part, that a lawyer shall not enter into a business transaction with a client unless (1) the transaction and terms on which the lawyer acquires an interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably under-

stood by the client; (2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and (3) the client consents in writing thereto. In his brief, the respondent admits that his *ex post facto* act of raising his contingent fee after settlement negotiations concluded was a business transaction with the client in which the respondent had a personal pecuniary interest. The manner and timing by which the respondent exerted the change upon his client were not fair and reasonable. After settlement negotiations had concluded, the respondent presented his client with a new agreement calling for a 10% hike in the contingency fee. The respondent advised his client that the increased fee was to protect the money from attachment, although the respondent failed to explain how his own increased fee would provide that protection. The client testified that she felt she had no choice but to accept the new agreement. The respondent did not advise the client to consult independent counsel nor did he obtain her express written consent to his self-serving amendment to the contingency fee agreement. Accordingly, we find that the respondent violated Prof.Cond.R. 1.8(a).[3]

Professional Conduct Rule 1.5(a) provides that a lawyer's fee shall be reasonable.[4] After initially negotiating a 40%

---

**3.** The present situation differs from typical contingent fee negotiations between lawyers and their clients because here the contingency of the fee had expired with conclusion of the settlement negotiations—the insurer had offered to settle for $11,000 and the client had advised the respondent to accept the offer. In effect, the respondent attempted to increase his contingency fee arrangement with an unsophisticated client after the contingency no longer existed. These unique circumstances activated the need for the protections required for lawyer-client business transactions provided in Prof.Cond.R. 1.8(a). By this holding today, however, we do not mean to require that all modifications to contingency

fee agreements under any circumstances be subject to the client protections contained in Prof.Cond.R. 1.8(a).

**4.** Professional Conduct Rule. 1.5(a) provides:
(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

contingency fee with his client, the respondent later (after the amount of the settlement was agreed) increased that fee by 10% of the overall recovery without any new consideration. We find that his efforts to extract a greater fee under these circumstances amounted to the charging of an unreasonable fee in violation of Prof. Cond.R. 1.5(a).

Having found misconduct, we now turn to the issue of proper discipline. In that regard, the hearing officer found that the respondent's motivation for his actions under Count I was self-preservation. She found that his motivation underlying his actions in Count II was greed. Further aggravating his misconduct under Count II was the fact that even though it has been several years since the client's case settled, the respondent has never refunded any portion of the fee to the client. The hearing officer concluded that a suspension from the practice of law without automatic reinstatement was appropriate.

Because the respondent's actions overall demonstrate his willingness to subordinate his clients' interests to his own, we agree with the hearing officer's recommended sanction. Accordingly, we conclude that the respondent, Allen Robert Thayer, should be suspended from the practice of law for a period of at least thirty (30) days, beginning May 7, 2001, after which he shall be eligible to petition this Court for reinstatement to the bar of this state.

The Clerk of this Court is further directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit,

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

the clerk of each of the United States District Courts in this state, and the clerks of the United States Bankruptcy Courts in this state with the last known address of respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against the respondent.

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.