**In the Matter of William K. HEFRON.**

No. 98S00–0006–DI–390.

Supreme Court of Indiana.

July 29, 2002.

Gordon A. Etzler Hoeppner, Wagner & Evans Valparaiso, IN, for the Respondent.

Donald R. Lundberg, Executive Secretary, Indianapolis, IN, for the Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

PER CURIAM.

Attorney William K. Hefron agreed to represent a client on an hourly basis to recover assets belonging to an estate. Upon learning that substantial assets could be easily recovered, he insisted the client sign a new fee agreement under which the respondent would receive a significant percentage of the value of the recovered assets, as well as a percentage of the value of the estate. For this professional misconduct, we suspend the respondent from the practice of law in Indiana for six months.

Having been admitted to the bar in this state in 1989, the respondent is subject to our disciplinary jurisdiction. We appointed a hearing officer, who determined that the Commission proved by clear and convincing evidence that the respondent violated Ind. Professional Conduct Rules 1.5(a), which prohibits attorneys from charging an unreasonable fee, and 1.8(a), which prohibits renegotiation of an attorney fee absent certain protections for the client. The respondent, pursuant to Ind. Admission and Discipline Rule 23(15), filed a *Petition for Review* of the hearing officer's report. The Commission responded, arguing that the respondent's failure to cite to the record is fatal to his allegations of errors in the hearing officer's findings. In his reply, the respondent notes that the Ind. Rules of Appellate Procedure do not govern briefs in disciplinary matters, reiterates his allegations of errors, but still fails to provide consistent citations to the record to support those claims.

■ Our review of disciplinary cases is *de novo* in nature, and we will review the entire record presented. *Matter of Tsoutsouris,* 748 N.E.2d 856 (Ind.2001). The hearing officer's findings receive emphasis due to the hearing officer's unique opportunity for direct observation of witnesses, but this Court reserves the right to make the ultimate determination. *Id.* Although the formal briefing requirements within the Indiana Rules of Appellate Procedures are not binding in an attorney discipline action, a party seeking review of the hearing officer's report must present to this Court a record, authority, and cogent argument. *Matter of Cook,* 526 N.E.2d 703 (Ind.1988); Ind. Admission and Discipline Rule 23(15). Where a party cites law or facts within the record, the party should provide appropriate citations. *Matter of Cook,* 526 N.E.2d at 705.

■ As a preliminary matter, the respondent challenges the hearing officer's appointment as a violation of due process. He contends that the hearing officer should not have served because he: 1) is an attorney subject to the same rules and regulations as the respondent and 2) serves as legal advisor to the Indiana State Police. The respondent further suggests the hearing officer was biased because he was paid by the Disciplinary Commission and chosen from a list maintained by the Commission. The respondent concedes Admis.Disc.R. 23(14)(a) authorized the respondent to seek a change of hearing officer upon a showing of good cause within 10 days after the hearing officer's appointment and that·he did not seek such a change until late in the proceeding. The respondent excuses his untimeliness by claiming the 10–day period is unconstitutionally brief.

■ The respondent fails to provide·cogent argument or to cite to any supporting authority, including the constitutional provisions upon which he relies. Nonetheless, we note that hearing officers in disciplinary cases are chosen and appointed by this Court without input from the Commission. Hearing· officers are paid from Supreme Court funds. Our rules of procedure provide that appointment of lawyers as hearing officers in disciplinary proceedings is appropriate. Admis.Disc.R. 23(11)(b). In the context of an attorney disciplinary action, due process requires notice and an opportunity to be heard in a fundamentally fair proceeding. *Matter of Wireman,* 367 N.E.2d 1368, 270 Ind. 344 (Ind.1977). The respondent does not specify how the hearing officer's status as a lawyer or his association with the Indiana State Police prevented him from fulfilling impartially his duties as a hearing officer nor does the respondent establish any other unfairness in the proceeding. Accordingly, we reject the respondent's due process claim.

We find the respondent agreed to represent a client in identifying and recovering assets belonging to the estate of her deceased sister. The respondent initially refused to represent the client on a percentage basis. They agreed on March 2, 1995, to a fee of $110 per hour, with a retainer of $2,000 to be paid in advance, but the agreement was not reduced to writing.

In March and April 1995, the respondent performed little work in the case, but the client worked extensively to find the assets and reported all of her findings to the respondent. On April 24, 1995, the respondent wrote to the client's sister demanding that she return assets properly belonging to the estate. On May 1, 1995, the respondent met with counsel for the client's sister who assured the respondent that his client would cooperate in any effort to identify, collect and administer assets. The respondent gave opposing counsel a lengthy list of suspected assets derived from the client's investigation, and

opposing counsel promised a report and accounting soon.

Two days later the client met with the respondent, who presented the client with a written contingent fee calling for a fee of 33–1/3 percent. The client refused to consider such an agreement. The respondent revised the fee agreement to provide for a fee of 21 percent of all assets he recovered for the estate and, in addition, 4 percent of the value of the estate for representing the client, as personal representative, in administering it. The respondent told the client that he was unwilling to perform any further work in the case without a signed contingent fee agreement because he expected the case would go to trial and that it would be a long and difficult battle. The client agreed to consider the contract and left the respondent's office that day without signing it. During the next six weeks, the respondent contacted the client on several occasions and reiterated his unwillingness to proceed with the representation absent a signed contingency fee contract.

On June 13, 1995, opposing counsel delivered a partial accounting of estate assets which proposed that the client's sister return $236,000 in assets to the estate, along with unvalued stock certificates and securities in 13 companies which were later valued at slightly less than $120,000. The respondent did not inform the client about this development until after the client signed the contingency fee agreement and delivered it to the respondent's office on June 22, 1995. On June 29, 1995, opposing counsel provided another accounting to the respondent proposing that the client's sister return $363,436.37 in liquid assets, plus the still unvalued stock certificates and securities listed in the prior accounting. Opposing counsel also offered to have the client's sister compensate the estate for any actual earned interest and imputed interest unearned by the estate as a result of the actions of the client's sister. Ulti-

mately, the value of all assets listed in that second accounting exceeded $480,000.

Also on June 29, 1995, when the estate was still an unsupervised special administration, the respondent filed a motion seeking judicial approval of the contingency fee contract and tendered a draft order approving the contract. The respondent did not disclose in his motion that he already had received a draft accounting from opposing counsel and an offer to transfer those assets to the estate voluntarily. The probate court approved the contract on the same day without hearing. The client was unaware the motion was to be filed, was not given advance notice or any opportunity to attend, and was not served with the order approving the fee agreement.

On July 21, 1995, at approximately 11:09 a.m., after the estate had been converted from an unsupervised special administration to a supervised estate, the respondent filed another motion seeking judicial approval of the same contingency fee contract and tendered a draft order approving that contract. The respondent did not disclose in his motion that later that day he was scheduled to receive from opposing counsel all of the assets set forth in the accounting. The probate court again approved the contract the same day the motion was filed without a hearing. Once again, the client was not aware the motion was to be filed and was not served with the signed order. The transfer of assets occurred as scheduled later that day, and the respondent, in turn, delivered the assets to the client, as personal representative for the estate.

Without any advance notice to the client or the other heirs of the estate, the respondent on August 2, 1995, filed a motion to approve his collection of attorney fees under the contingent fee agreement. The court granted the motion on the same day without hearing. The order was not

served on the client or any other heirs of the estate.

Later that day, the respondent informed the client that the court had ordered payment of $76,531.64 in attorney fees to him. That represented 21 percent of the liquid asserts returned by opposing counsel but did not include a percentage of the value of the unvalued stocks and securities. After seeking advice from independent legal counsel, the client discharged the respondent. The respondent filed a motion to withdraw and sought additional fees of $25,123.50, representing 21 percent of the value of the previously unvalued stocks and securities. The client's new counsel objected to the fees as excessive and contrary to law. The respondent's time sheets reflected 48 hours of work performed in the case by the respondent between the date of his hiring and the date of his discharge.

The probate court conducted a hearing in the matter and reduced the respondent's fees to $40,000. The court also rejected the respondent's claim for the additional $25,123.50 in fees. The Indiana Court of Appeals affirmed the probate court in a memorandum decision. *Kovacich v. Hefron*, case number 64A03–9907–269, 732 N.E.2d 254 (Ind.App.2000).

We find the respondent violated Prof.Cond.R. 1.5(a) by charging an unreasonable fee.[1] The respondent billed the estate $101,544.14, though the matter essentially was uncontested and he could document only 48 hours of work on the client's behalf.[2] Although the respondent appears to suggest that the probate court affirmed the reasonableness of his fee, the court made a contrary finding. It determined the respondent committed constructive fraud by failing to disclose the opposing side's cooperation to the client before her return of the signed fee agreement. In reducing the respondent's fees to $40,-000—slightly more than half of what the respondent already had collected and less than 40 percent of what he billed—the probate court found:

> The recovery of estate assets was ultimately not a difficult or time consuming undertaking. At the time the contingency contract was signed(,) Hefron then knew that he would recover very substantial sums of money without litigation. As the matter was a simple one, it did not preclude Hefron from undertaking other employment.

Commission's Exhibit 47, at 9–10.

We further note the amount the respondent billed was nearly 20 times more than

---

1. In determining the reasonableness of a fee, we consider the following:
   (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
   (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
   (3) the fee customarily charged in the locality for similar legal services;
   (4) the amount involved and the results obtained;
   (5) the time limitations imposed by the client or by the circumstances;
   (6) the nature and length of the professional relationship with the client;
   (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
   (8) whether the fee is fixed or contingent.
   Prof.Cond.R. 1.5(a).

2. The respondent testified that he typically did not record hours worked in contingent fee cases. He also asserted that the hourly billings he submitted to the client for work on her behalf in March and April 1995 were not complete—that he performed additional, unspecified, undocumented work on behalf of the client. He did not explain why he submitted a written bill to her detailing hourly charges for part of his work in that two-month period but failed to note or charge her for other work.

the $5,280 he would have received under the original fee agreement, which called for an hourly rate of $110 per hour for the 48 hours of work.

We have stated that a lawyer who, after entering into a contingent fee agreement with a client, ascertains that recovery by the client will be simple and uncontested, should renegotiate the fee, rather than accept an inflated contingency fee. *Matter of Gerard,* 634 N.E.2d 51 (Ind.1994). In this case, the respondent, by insisting on a fee which totaled approximately 25 percent of the value of the estate, charged an unreasonable fee in violation of Prof. Cond.R. 1.5(a).

We further find the respondent violated Prof.Cond.R. 1.8(a) by renegotiating the fee agreement unfairly. Prof.Cond.R. 1.8(a) provides:

A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

(3) the client consents in writing thereto.

The respondent makes two arguments in support of his claim that he did not violate Prof.Cond.R. 1.8(a). First, he claims the contingency fee agreement was not a business transaction with a client. He asserts the parties agreed at the onset of the representation to two fee agreements—an hourly rate until assets were discovered and a contingency fee after-

ward. Therefore, the respondent reasons, no new fee agreement was negotiated after the representation began and Prof.Cond.R. 1.8(a) does not apply.

While the evidence as to the fee agreements was conflicting, the respondent's admissions contradict his claim that no fee agreement was negotiated after the representation began. The respondent concedes that prior to May 3, 1995, the terms of the fee agreement(s) had not been reduced to writing. He also acknowledges that the client on or around May 1, 1995, rejected the respondent's insistence on a fee of one-third of the value of the estate assets and that the terms of the contingency fee agreement were negotiated on May 3, 1995.

The respondent further concedes he billed at an hourly rate for the first two months of the representation but later refunded those fees after seeking payment pursuant to the contingency fee agreement. Such actions suggest that the contingency fee agreement was a substitute for, not a supplement to, the hourly billing agreement.

The probate court, in determining that the contingency fee agreement was the result of undue influence by the respondent, found that "(t)he contingency fee arrangement and contract was suggested, prepared, negotiated and finally signed while an attorney-client relationship existed." Commission's Exhibit 47, pp. 7–8. We find the evidence in this case supports that finding and conclude the respondent's negotiation of the contingency fee agreement with the client constituted a "business transaction" to which Prof.Cond.R. 1.8(a) applies.

The respondent also asserts that the transaction was fair to the client and, therefore, not prohibited by Prof.Cond.R. 1.8(a). He contends the fee agreement negotiations were concluded on May 3 and

that as of that date, only one specific asset—an $84,000 bank account—had been identified. The respondent also claims the opposing side's cooperation was uncertain until he received the letter and accounting from the opposing counsel on June 29, 1995—a week after he received the signed fee agreement from the client. He claims his refusal to perform any further work in the case until the client signed the contingency fee agreement was not an attempt to coerce the client but, rather, his diligent effort to comply with Prof.Cond.R. 1.5(c), which requires that contingency fee agreements be reduced to writing.

The evidence establishes that the respondent's motivation for his renegotiation of the fee agreement was his own pecuniary gain and that he withheld information from both the client and the probate court in his effort to procure his unreasonable fee. The respondent insisted on an hourly rate when recovery was not assured but coerced his client into acquiescing in a contingency fee agreement once the likelihood of a substantial recovery arose. Though the opposing side on May 1, 1995, pledged its cooperation and promised a full accounting, the respondent represented to his client on May 3 that litigation was likely. In fact, the respondent did not inform the client of the opposing side's cooperation until after the client returned the signed fee agreement on June 22, 1995. The respondent also omitted essential facts when he petitioned the probate court for approval of the fee agreement and his fee. The probate court ruled that the respondent did not disclose "the circumstances relating to or existing, concerning the execution of the attorney fee contract, collection of assets or administration of the estate ..." including that opposing counsel was scheduled to deliver estate asserts to the respondent later that day. Commission's Exhibit 47, p. 5. This evidence establishes that both the contingency fee agreement and the circumstances under which it was negotiated and approved were unfair. Indeed, they amount to a clear violation of Prof.Cond.R. 1.8(a).

Even if the terms of the renegotiated fee agreement were fair and fully disclosed in writing as Prof.Cond.R. 1.8(a) requires, the respondent nonetheless did not give his client a reasonable opportunity to seek the advice of independent counsel in the transaction.

█ Having found misconduct, we must now assess an appropriate discipline for it. The respondent's insistence on an unreasonable fee negotiated unfairly led to additional court proceedings and, ultimately, an appeal. He omitted or misrepresented essential facts in his presentations to his client and the probate court to secure the unreasonable fee. Where an attorney has obtained a more lucrative fee agreement through fraud, we have determined that a suspension from the practice of law is appropriate. *Matter of Thayer*, 745 N.E.2d 207 (Ind.2001). Accordingly, the respondent, William K. Hefron, is hereby suspended from the practice of law in this state for six months, effective September 7, 2002, after which he shall be automatically reinstated.

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the United States District Courts in this state and the clerks of the United States Bankruptcy Courts in this state with the last known address of respondent as reflected in the records of the Clerk.

Cost of this proceeding are assessed against the respondent.