ATTORNEY FOR THE RESPONDENT
James J. Bell
Indianapolis, Indiana

ATTORNEYS FOR THE INDIANA SUPREME COURT
DISCIPLINARY COMMISSION
G. Michael Witte, Executive Secretary
Frederick L. Rice, Staff Attorney
Indianapolis, Indiana



In the

# Indiana Supreme Court

No. 55S00-0906-DI-267

IN THE MATTER OF:

KENNETH E. LAUTER,

*Respondent.*

Attorney Discipline Action
Hearing Officer Annie Christ-Garcia

**September 17, 2010**

**Per Curiam.**

This matter is before the Court on the report of the hearing officer appointed by this Court to hear evidence on the Indiana Supreme Court Disciplinary Commission's "Verified Complaint for Disciplinary Action," and on the post-hearing briefing by the parties. The Respondent's 1991 admission to this state's bar subjects him to this Court's disciplinary jurisdiction. See IND. CONST. art. 7, § 4.

We find that Respondent, Kenneth E. Lauter, engaged in attorney misconduct by failing to communicate adequately the basis of his fee to a client. For this misconduct, we find that Respondent should receive a public reprimand.

**Background**

Respondent testified that he has 27 years of experience litigating employment discrimination claims before the Equal Employment Opportunity Commission ("EEOC") and in federal court. Prior to bringing such a claim in federal court, a claimant must file a claim with the EEOC. In Respondent's experience, an administrative EEOC proceeding is far less complex than a court proceeding. At the end of the administrative proceeding, the EEOC will issue either a finding of "no probable cause" or "probable cause." Regardless of the outcome, a litigant may then proceed to court. At that point, an attorney may also file a Freedom of Information Act ("FOIA") request to obtain the EEOC file, from which the attorney can learn the details of the EEOC's investigation, including the position of the claimant's employer. The information so gathered can help the attorney determine whether the case has sufficient merit to proceed to federal court. This process is what Respondent refers to as his "due diligence."

In May 2003, Respondent and his law firm were retained by a client to pursue an employment discrimination claim. The client and Respondent's firm entered into a written "Attorney Services Contract" ("Contract") that was signed by the client. The Contract provided for a contingency fee based on the amount recovered (one-third if settled prior to trial, 40% otherwise). It also called for an "engagement fee" of $750, which the client paid. Finally, the Contract contained a hand-written notation in the bottom margin, initialed by the client, calling for an "additional retainer fee payable if client and firm agree to file federal court litigation" ("additional retainer"). The client and Respondent agreed to leave the amount of the additional retainer undetermined until Respondent had completed his due diligence and decided whether to advise the client to proceed to federal court. Respondent testified that a typical engagement fee for an attorney taking an employment discrimination case is $5,000, whether or not federal litigation is involved. Respondent's practice of charging an initial engagement fee of just $750 allows a claimant whose case goes only through the EEOC proceeding to pay less than a claimant whose case goes on to federal litigation.

In the client's case, the EEOC issued a finding of no probable cause in December 2003. Respondent then filed a FOIA request for the EEOC file. After receiving the file in February 2004, he contacted the client the next day to inform her that he believed the case had sufficient merit to proceed to federal court. He testified that he "reminded her of the additional retainer that she had initialed and said it would be four thousand, two hundred and fifty dollars ($4,250.00)." This amount was not reduced to writing. Respondent did not advise the client that she might wish to consult independent counsel before agreeing to this amount. Three days after this conversation, the client wrote a check to Respondent's firm in the amount of $4,400.00— $150.00 for the filing fee and $4,250.00 for the additional retainer. The client's lawsuit was successfully settled, and on May 15, 2006, the client recovered $75,000.00 from the defendant. Respondent's total fee was $30,000 (the $750 engagement fee, the $4,250 additional retainer, and a $25,000 one-third contingent fee).

The Commission charged Respondent with violation of Profession Conduct Rules 1.5(b), 1.5 (c), and 1.8(a).[1] The hearing officer concluded that Respondent committed no rule violation and recommended judgment for Respondent. The Commission seeks this Court's review of her findings, conclusions, and recommendation.

## Discussion

Professional Conduct Rule 1.5(b). This rule provides in relevant part:

> The scope of the representation and the **basis or rate of the fee** and expenses **for which the client will be responsible shall be communicated to the client**, preferably in writing, before or within a reasonable time after commencing the representation . . . .

(Emphasis added.)

---

[1] These rules were amended effective January 1, 2005. Although Respondent's alleged misconduct predates these amendments, the parties and the hearing officer treated the amended versions as applying. This opinion therefore will do the same.

The fee agreement at issue consisted of three components. The Commission argues that leaving the additional retainer component unspecified until well into the representation was a violation of this rule.

Respondent testified that at the outset of an employment discrimination case, he does not know enough about its merits to determine the amount to charge as an additional retainer. He therefore leaves the additional retainer amount blank until he has completed his due diligence. He then determines the amount of the additional retainer by evaluating all the evidence to assess the possibility of successful litigation in federal court and the effort required to pursue it. Respondent also testified that the "industry standard" fee was $5,000 if the case was not resolved prior to taking it to federal court. There seems to be no reason why this amount, or an estimated range, could not have been communicated to the client at the outset of the representation, if was "usual" or "standard."

"The relationship between lawyer and client is a fiduciary one in which the lawyer occupies the highest position of trust and confidence." Prof. Cond. R. 1.8 cmt. [17]. "Lawyers almost always possess the more sophisticated understanding of fee arrangements. It is therefore appropriate to place the balance of the burden of fair dealing and the allotment of risk in the hands of the lawyer in regard to fee arrangements with clients." Matter of Myers, 663 N.E.2d 771, 774-75 (Ind. 1996). When the Contract was negotiated, Respondent was a lawyer with decades of experience in employment discrimination litigation, including in-depth knowledge of the fees typically charged for such cases. A client will ordinarily lack any knowledge of such matters. In such circumstances, when a fee agreement gives no disclosure or guidance as to how an initially unspecified fee component will be set, the danger of client confusion and lawyer overreaching is apparent.

We do not suggest that Respondent is guilty of overreaching in his dealing his clients. There is no allegation that the fee he charged in this case was unreasonable, that he did not represent the client well, or that he did not achieve a good result for her. Respondent's structuring of his fees so clients whose claims are resolved at the administration level pay a lower fee than those whose cases must go to court appears intended to benefit his clients and is

4

certainly not to be discouraged.  The problem in this case is that Respondent gave no indication to the client of what the additional retainer would be or how it would be determined.

Without attempting to exhaust the possibilities of how attorneys may satisfy the disclosure requirement, Respondent could have complied with Rule 1.5(b) in this particular case by:  (1) stating the amount of the additional retainer the client would owe if the case went to court; (2) disclosing a range for the additional retainer with an upper limit; or (3) providing a method by which the additional retainer would be calculated.  Any of these disclosures would have given the client adequate warning of what her fee exposure would be and sufficient information to "comparison shop" for alternative counsel if she thought Respondent's fee was too high.  Because Respondent failed to communicate adequately the basis of his fee to his client, we conclude that he violated Rule 1.5(b).

> Professional Conduct Rule 1.5(c).  This rule provides in relevant part:
>
> 1.5(c):  **A contingent fee agreement shall be in a writing signed by the client and shall state the method by which the fee is to be determined**, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal; litigation and other expenses to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated.

(Emphasis added.)

The contingent component of Respondent's fee was in writing, as was the requirement for an additional retainer if the case went to court.  The Commission argues that the amount of the additional retainer also was required to be in writing because it was part of a "contingent fee agreement" within the meaning of Rule 1.5(c).  We note that if Respondent had complied with Rule 1.5(b) at the outset by making adequate disclosure in the Contract regarding the additional retainer, this would have satisfied the writing requirement of Rule 1.5(c).

Aside from the writing requirement, however, Rule 1.5(c) requires disclosure of the method by which the contingent fee is to be determined.  In this case, the handwritten note in the Contract calls for an additional retainer if the case goes to court without stating how payment of

the additional retainer will figure into the calculation of any contingent fee that might eventually be owing.  In particular, the Contract does not state whether the additional retainer will applied toward the contingent fee or whether it is to be in addition to the contingent fee.  The term "retainer" might imply to a lawyer that it is to be in addition to the contingent fee, and this is way Respondent treated it.  But one purpose of this rule is to protect the lay client who is unfamiliar with the legalese and industry standards regarding attorney fees.  Because the Contract fails to disclose adequately the method by which the contingent fee was to be calculated, we conclude that Respondent violated Rule 1.5(c).

> <u>Professional Conduct Rule 1.8 (a)</u>.  This rule provides in relevant part:
>
> A lawyer **shall not enter into a business transaction with a client**. . . unless:
>
> > (1)  the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are **fully disclosed and transmitted in writing** in a manner that can be reasonably understood by the client;
> >
> > (2)  the client is **advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel** on the transaction; and
> >
> > (3)  the client **gives informed consent, in a writing signed by the client**, to the essential terms of the transaction  . . . .

(Emphasis added.)

Comment [1] to this rule states that it "applies when a lawyer seeks **to renegotiate the terms of the fee arrangement** with the client after representation begins in order to reach a new agreement that is more advantageous to the lawyer than the initial fee arrangement."  (Emphasis added.)  The Commission alleges that Respondent renegotiated the fee agreement with his client when he set the amount of the additional retainer and thus violated this rule by not following its requirements.

The Court has found lawyers guilty of violating Rule 1.8(a) when they changed the terms of a fee agreement to be more advantageous to them without providing clients with the

safeguards mandated by this rule. *See, e.g.,* <u>Matter of Hefron</u>, 771 N.E.2d 1157 (Ind. 2002) (attorney who agreed to hourly fee to handle estate insisted on contingent fee after discovering substantial assets); <u>Matter of Thayer</u>, 745 N.E.2d 207 (Ind. 2001) (attorney presented new fee agreement to client on the day of settlement raising contingent fee from 40% to 50 %).

In the current case, Respondent and the client agreed at the outset to leave the amount of the additional retainer initially undetermined. We view the problem in this case more as Respondent's failure at the outset to communicate his fee adequately to the client rather than as a later ethical lapse when setting the amount of the additional retainer. If Respondent had made adequate disclosure of his fee at the outset, the safeguards of Rule 1.8(a) would not be necessary to protect the client. Having found that Respondent violated Rule 1.5(b) at the outset, we decline to find that he also violated Rule 1.8(a).

## <u>Conclusion</u>

The Court concludes that Respondent violates Indiana Professional Conduct Rules 1.5(b) and 1.5(c) by failing to communicate adequately the basis of his fee to a client. For Respondent's professional misconduct, the Court imposes a public reprimand.

The costs of this proceeding are assessed against Respondent. The hearing officer appointed in this case is discharged.

The Clerk of this Court is directed to give notice of this opinion to the hearing officer, to the parties or their respective attorneys, and to all other entities entitled to notice under Admission and Discipline Rule 23(3)(d). The Clerk is further directed to post this opinion to the Court's website, and Thomson Reuters is directed to publish a copy of this opinion in the bound volumes of this Court's decisions.

Shepard, C.J., and Sullivan and Boehm, JJ., concur.

Dickson and Rucker, JJ., dissent, believing that the Commission did not prove a charged violation by clear and convincing evidence and thus that the Hearing Officer correctly found no violation and recommended a finding in favor of the Respondent.