**FOUR WINDS, LLC, Appellant–Respondent,**

v.

**SMITH & DeBONIS, LLC, Appellee–Petitioner.**

No. 45A03–0508–CV–403.

Court of Appeals of Indiana.

Sept. 19, 2006.

Rehearing Denied Dec. 6, 2006.

Edward W. Hearn, Johnson & Bell, Ltd., Highland, IN, Attorney for Appellant.

Terrance L. Smith, Ph.D., Adrian P. Smith, Smith & DeBonis, LLC, Highland, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Chief Judge.

This case involves a dispute for attorney fees brought by the law firm of Smith & DeBonis, LLC ("Smith") against its former client, Four Winds, LLC ("Four Winds"). In this appeal, Four Winds raises three issues, which we restate as:

I.  Whether the trial court erred in entering judgment for Smith be-

cause the case in which Smith earned the contingent attorney fees is still pending in federal court.

II. Whether the trial court erred by failing to conduct a separate hearing on whether Smith's conduct following its termination constituted a breach of fiduciary duty that would have reduced the fees that Four Winds owed to Smith.

III. Whether the trial court erred when it granted Smith a lien on Four Winds' property as security for Smith's unpaid fees, although Smith's work did not create or obtain the liened property.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On September 9, 2000, Bank One sued Four Winds in Lake County, seeking to foreclose on a construction loan that Four Winds had obtained in order to finance and build a 180–unit apartment complex in Lake County, Indiana. Four Winds hired attorney Herbert Lasser of Lasser & Associates ("Lasser") to represent it in that litigation, as well as in Four Winds' counterclaims against Bank One (the "Bank One Action"). Four Winds agreed to compensate Lasser on a contingency fee basis of 40%. On September 26, 2000, American Express Tax Advisors ("American Express") was appointed as Receiver and ordered to take possession of the property and structures, which consisted of four uncompleted buildings, in various stages of construction, on eighteen acres. In general, American Express's duties were to protect, maintain, and preserve the property until further order of the court. After some time, Four Winds decided that American Express was failing to properly care for and maintain the multiple build-

ings, and it pursued an application to allow it to sue American Express.

Smith became involved in August 2001, when Four Winds hired Smith to assist Lasser with the Bank One and American Express lawsuits. Eventually, in August 2002, Four Winds received the trial court's permission to sue American Express. Thereafter, Four Winds filed suit, and the case was subsequently removed to federal court, where it is pending in the Northern District of Indiana (the "American Express lawsuit").

In October 2002, Smith, Lasser, and Four Winds entered into a new attorney employment agreement (the "Fee Agreement"). For representing it in the American Express lawsuit, Four Winds agreed to pay Smith "a contingent fee in a sum equal to forty percent (40%) of the gross amount of any recovery, made for said claim by settlement, trial or otherwise[.]" *Appellant's App.* at 135. The only provision regarding termination of counsel, which is particularly pertinent to this dispute, was located in the "Settlement" section of the Fee Agreement, and it read:

[I]f the Client discharges the Attorney, the Client agrees to compensate the Attorney for the reasonable value of the Attorney's services rendered to the Client up to the time of the discharge based on the Attorney's prevailing hourly charge in effect at the time of termination.

*Id.* at 136.

In May 2003, Four Winds succeeded in avoiding foreclosure in the Bank One action when the trial court granted Four Winds' motion to dismiss following the conclusion of Bank One's evidence. Shortly thereafter, in July 2003, Four Winds settled its counterclaims against Bank One, and attorneys Lasser and Smith were paid their fees in connection with their

work on the Bank One action. American Express returned possession of the property to Four Winds in July 2003. *Appellee's App.* at 3.

Meanwhile, back in November 2000, the Lake County Building Department had begun proceedings to have the structures demolished and issued orders to eliminate any unsafe or nuisance concerns. Over time, the condition of the premises declined, and by June 2001, the buildings were being considered as possible health hazards. In October 2003, the Porter Superior Court issued an order for the complete removal and demolition of the buildings.

In December 2003, Four Winds terminated Lasser as counsel. At that time, Four Winds pursued renegotiation of their contract with Smith, but the parties failed to reach an agreement. Eventually, Four Winds decided that it lacked trust and confidence in Smith, and in March 2004, Four Winds advised Smith of their desire to terminate it as counsel. Four Winds and Smith exchanged correspondence over the matter; Smith advised Four Winds of the possible consequences that might flow from its termination, which Four Winds perceived as an attempt to coerce Four Winds to retain Smith as counsel. Eventually, Smith filed its withdrawal of appearance in April of 2004.

Immediately thereafter, a dispute arose over payment of attorney fees. In May 2004, Smith filed a petition for judgment against Four Winds.[1] *Appellant's App.* at 14. Smith sought an award of attorney fees for work performed by both the Smith and Lasser law firms in connection with the American Express lawsuit.

On December 17, 2004, the trial court conducted a hearing on, among other matters, Smith's petition for judgment. On December 21, it granted Smith a judicial lien in the amount of $637,015.70 upon the subject real property belonging to Four Winds,[2] and after acknowledging that the exact amount of the attorney fees remained in dispute, the trial court appointed a special master "to determine the amount of the attorney fee that Smith & DeBonis, LLC is entitled to receive and recover from Four Winds, LLC." *Id.* at 59.

On March 25, 2005, the special master held a hearing on the matter of the amount of fees that Smith was entitled to receive and recover from Four Winds,[3] and after receiving trial briefs and proposed findings of fact and conclusions of law from the parties, the special master issued a report on June 8, 2005, which contained findings of fact and conclusions of law. In it, the special master concluded that the reasonable value of Smith's services in the American Express lawsuit was $544,260.05.[4]

1. We note some references in the record to a "Petition for Fees" as having been filed, *see e.g., Appellant's Br.* at 3; *Appellant's App.* at 23 and *Appellee's App.* at 28, but the chronological case summary ("CCS"), *Appellant's App.* at 1–55, does not reflect any such filing, nor is a "Petition for Fees" included in either party's appendix. Although the CCS reflects that Smith filed a "Petition for Judgment" on May 4, 2004, that pleading likewise is not included in the record before us.

2. The court indicated that if and when Four Winds produced documentation that the lien

was hampering its ability to finance the project, the court would entertain a hearing to determine other possible solutions. *Tr.* at 8.

3. A transcript of this hearing is not included in the record before us.

4. Although we do not know the exact date, we note that Four Winds voluntarily granted Smith an attorney lien "upon any settlement or judgment obtained" in the American Express lawsuit pending in federal court. *Appellant's App.* at 108, 131, 169; *Tr.* at 3.

On July 11, the trial court conducted a hearing on the special master's report and Four Winds' objections to it. Thereafter, on August 4, 2005, the trial court issued an order and judgment, adopting the special master's findings and ordering that Smith was entitled to recover $544,260.05 from Four Winds. The court also entered judgment in favor of Smith and against Four Winds in that amount,[5] and Four Winds now appeals.

## DISCUSSION AND DECISION

### Standard of Review

Here, the trial court appointed a special master "to determine the amount of the attorney fee that Smith & DeBonis, LLC is entitled to receive and recover from Four Winds, LLC." *Appellant's App.* at 59. Our trial rules dictate that "[t]he findings of a master, ... shall be considered as findings of the court to the extent that the court adopts them." Ind. Trial Rule 52(A). In this case, the trial court's August 4, 2005 order and judgment expressly accepted, approved, and adopted the findings of the special master. Because the special master's findings are considered the findings of the trial court, we are guided in our review by T.R. 52(A), which states, "On appeal of claims tried by the court without a jury ... the court on appeal shall not set aside the findings or judgment unless clearly erroneous[.]" *See also,* T.R. 53(E)(2) ("In an action to be tried without a jury the court shall accept the master's decision or his findings of fact unless clearly erroneous.").

In this situation, we utilize a two-tier standard of review. *See Wedgewood Cmty. Ass'n, Inc. v. Nash,* 781 N.E.2d 1172, 1177–78 (Ind.Ct.App.2003), *clarified on reh'g,* 789 N.E.2d 495 (Ind.Ct.App. 2003), *trans. denied* (2004). First, we consider whether the evidence supports the findings. *Id.* Findings are clearly erroneous only when a review of the record leaves us firmly convinced that a mistake has been made. *Id.* Next, we determine whether the findings support the judgment. *Id.* A judgment is clearly erroneous when the findings of fact and conclusions thereon do not support it. *Id.* In applying this standard, we neither reweigh the evidence nor judge the credibility of the witnesses; rather, we consider the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. *Id.* (quotations and citations omitted); *see also Burke v. Bozik,* 802 N.E.2d 442, 448–49 (Ind.Ct.App.2003).

### I. Payment of Attorney fees

■ After ordering that Smith was entitled to recover the sum of $544,260.05 from Four Winds, which represents the value of services performed in the American Express lawsuit, the court entered judgment in that amount in Smith's favor. Four Winds asserts that the Fee Agreement provided for payment of fees only upon completion of the American Express lawsuit, which continues to pend, and, thus, it was error for the trial court to enter judgment before completion of that litigation. In making a determination on this issue, we must examine the parties' Fee Agreement.

5. According to the CCS, on September 30, 2005, the trial court granted Four Winds' motion to stay proceedings to enforce the court's judgment, ordering that all proceedings to enforce the August judgment were stayed on the condition that Four Winds post an approved appeal bond or an approved irrevocable letter of credit in a specified amount. *Appellant's App.* at 5. The trial court also ordered the removal of the previously entered judicial lien in the amount of $637,015.70 from Four Winds' property and directed that it be replaced with the August 4, 2005 judgment. *Id.*

The interpretation and construction of contract provisions is a function for the courts. *Burke*, 802 N.E.2d at 451. Upon appeal, we will employ the same standard of review as applied by the trial court, that is, unless the terms of the contract are ambiguous, they will be given their plain and ordinary meaning. *Id.* Where the terms of a contract are clear and unambiguous, the terms are conclusive, and we will not construe the contract or look to extrinsic evidence, but will merely apply the contractual provisions. *Id.* The terms of a contract are not ambiguous merely because the parties disagree as to the proper interpretation of the terms. *Id.*

Essentially, there are two provisions of the Fee Agreement that are most pertinent to the resolution of this dispute. Neither party expressly contends the provisions are ambiguous; rather, they dispute their application. The first provision states that Smith would be paid "a contingent fee in a sum equal to forty percent (40%) of the gross amount of any recovery, made for said claim by settlement, trial or otherwise[.]" *Appellant's App.* at 135. The other is a termination clause, which states,

> [I]f the Client discharges the Attorney, the Client agrees to compensate the Attorney for the reasonable value of the Attorney's services rendered to the Client up to the time of the discharge based on the Attorney's prevailing hourly charge in effect at the time of termination.

*Id.* at 136. Four Winds argues that the terms of the Fee Agreement do not require payment until Four Winds receives some recovery, by trial or settlement, and that the trial court's order effectively imposed in the Fee Agreement an "acceleration clause," requiring immediate payment of fees, which did not exist in the document's terms. Four Winds thus maintains

that Smith is entitled to nothing unless and until it recovers from American Express. Smith asserts that, although the Fee Agreement originally provided for payment of fees only after the client's recovery, if any, the termination clause changed the terms of payment from a contingent percentage to an hourly rate, which would be due upon the client's discharge of the attorney. After careful consideration, we agree with Smith.

Our Supreme Court has approved of the use of termination clauses that provide for an hourly rate in the event of a pre-contingency termination, holding that they are "presumptively enforceable, subject to the ordinary requirement of reasonableness." *Galanis v. Lyons & Truitt*, 715 N.E.2d 858, 862 (Ind.1999) (citing Ind. R. Prof. Conduct 1.5). Other authorities have also recognized the usefulness and application of such provisions:

> [S]ome lawyers have entered into fee agreements permitting conversion of a contingent fee to an hourly fee. This convertibility feature usually responds to circumstances that are foreseeable, yet out of the lawyer's control.
>
>     . . . .
>
> It is also reasonable for a lawyer to include a conversion clause when the triggering event is a client action that materially changes the terms of the representation and makes it impossible for the lawyer to carry through her end of the original bargain.... Under such circumstances, a fee agreement obligating the client to compensate the lawyer at reasonable hourly rates for the time already expended is little more than a contract version of the normal remedy of recovery in *quantum meruit* when a lawyer is discharged.

1 Geoffrey C. Hazard, Jr. & W. William Hodes, The Law of Lawyering § 8.15, at 8–38 (3d ed.2003).

We acknowledge that the Fee Agreement, which provided that Smith would be paid its percentage from any recovery, was initially a contingent fee contract. *See Boonville Convalescent Ctr., Inc. v. Cloverleaf Healthcare Servs., Inc.,* 834 N.E.2d 1116, 1127 (Ind.Ct.App.2005), *trans. denied* (2006) (true "contingent fee" has two components: (1) payment is contingent on outcome, and (2) fee is a percentage to be deducted from client's recovery). We also recognize that *absent a contrary agreement* between the lawyer and the client, attorney fees pursuant to a contingency fee agreement should be taken only when the client receives payment. *In re Stochel,* 792 N.E.2d 874, 876 (Ind. 2003) (emphasis added) (citing Restatement (Third) of the Law Governing Lawyers § 35(2)). However, because a "contrary agreement" existed here, namely the termination clause, we find that the terms of payment were converted from a contingent fee into an hourly fee, which Smith was entitled to receive upon its discharge.

Four Winds argues that to require it, the former client, to pay Smith upon Smith's termination unduly burdens Four Winds and effectively impairs its right to terminate counsel at will. We do not agree.

> Upon completion of representation of a client in a matter, a lawyer is entitled to be paid any fees that are still outstanding, according to the terms of whatever contract, express or implied, underlay the relationship.
>
> . . . .
>
> [C]lients may not parlay the broad right to discharge a lawyer into a device to avoid the payment of legal fees legitimately incurred.

Hazard & Hodes § 8.22 at 8–54, –55. Indeed, "[w]here a lawyer has performed a distinct portion of the total task, and the client can readily obtain new counsel, allowing the lawyer full recovery for that portion of the work seems appropriate." *Id.* at 8–56. This is in accord with Indiana's own Rules of Professional Conduct, as explained in the Commentary: "A client has a right to discharge a lawyer at any time, with or without cause, *subject to liability for payment for the lawyer's services.*" Prof. Cond. R. 1.16 cmt. 4 (emphasis added); *Estate of Forrester v. Dawalt,* 562 N.E.2d 1315, 1316 (Ind.Ct.App.1990).

Lastly, we note the validity of Smith's assertion that whether and when it receives payment for work performed should not be dependent upon the skill and diligence of another lawyer now representing Four Winds. The termination clause eliminates the requirement that receipt of fees earned be tied to a settlement or verdict that is based upon events out of Smith's control. Under our view, the termination clause does not unduly constrain a client from exercising its right to terminate its attorney; it requires the client to pay for the services already received.

We discern no error with the trial court's order that entered judgment in Smith's favor.

## II. Hearing on Alleged Breach of Fiduciary Duty

Having determined that it was appropriate for the trial court to enter judgment on the attorney fees, rather than requiring Smith to wait until such time that Four Winds recovers on its case against American Express, we now turn to the issue of whether the trial court should have held a separate hearing to determine whether Smith violated any fiduciary duty to Four Winds, thereby reducing the fees that Smith was entitled to receive. For the most part, Four Winds does not quarrel with the amount of fees that Smith earned *during* the time that it represented Four Winds; rather, Four Winds' argu-

ment is that *after* Smith was terminated, Smith engaged in inappropriate, and what Four Winds perceived to be coercive, tactics in an attempt to convince Four Winds not to terminate it, which amounted to a breach of Smith's fiduciary duties to Four Winds. Four Winds asserts that, consequently, Smith's fees should be reduced or off-set.[6] On appeal, Four Winds' claim is that the trial court erred because it did not hold a separate hearing on the alleged breach of fiduciary duty. Smith responds that Four Winds waived the issue for appeal because the matter should have been presented to and addressed by the special master, who was appointed by the trial court to hear and determine the attorney fees issues. In the end, we agree with Smith and find no trial court error.

Initially, we note that Four Winds asserts that because it was not provided a separate hearing, it was denied the opportunity to present its "affirmative defense" relative to Smith's petition for fees; that is, it was precluded from presenting evidence on precisely when and how Smith breached its fiduciary duty to Four Winds. This "affirmative defense" terminology suggests to us that an answer was, in fact, filed. Our review of the CCS indicates only that Four Winds filed an Objection to Petition for Judgment on July 15, 2004. Because we do not have a copy of that pleading, we do not know if Four Winds therein pleaded any "affirmative defenses." Regardless, we sufficiently gleaned from the record before us, by way of subsequent filings, hearing transcripts, and the parties' appellate briefs, that the crux of Four Winds' claim is that after it told Smith that

it was terminated as counsel, Smith, in an attempt to convince Four Winds to retain it, sent correspondence to Four Winds that Four Winds considered coercive and amounted to financial pressure. Smith responds that it was merely explaining to its client, as it was required to do, the likely consequences of termination. The inquiry here is not whether Smith breached any duty, but rather whether that correspondence should have been presented to the special master at the hearing on attorney fees. In making our decision, we examine the exact language of the trial court's order, as well as the context of the referral to the special master.

In December 2004, the parties were in the midst of the attorney fee dispute. During the December 17 hearing, the trial court ordered Smith, who was retaining its file on the American Express lawsuit, to turn over the file to Four Winds, so that Four Winds could continue litigating the American Express case in federal court, where it was pending. To provide some security to Smith, the court granted Smith a lien on the subject property. Next, in an effort to minimize expending further court time and funds on the attorney fee issue, i.e. the amount of fees that Four Winds owed Smith, the court appointed a special master, whose fees would be paid by the parties. Specifically, the court's order of referral to the special master read:

> As the amount of the attorney fee which is the subject of the lien granted hereby is still in dispute, this Court hereby appoints and the parties agree that Robert Kennedy shall sit as Special Master pursuant to Indiana Rule of Trial Procedure

---

6. Due to a breach of duty, an attorney may forfeit fees that he accrued or may even be disgorged of fees that he has already received. *See* Hazard & Hodes, § 8.21 (discussing disallowance of lawyer's fee as sanction for gross abuse by lawyer of obligations to client or for other serious violations of the law of lawyer-

ing); Restatement (Third) of the Law Governing Lawyers § 37 Partial or Complete Forfeiture of Lawyer's Compensation (noting that conduct constituting malpractice is not always the same as conduct warranting fee forfeiture and malpractice damages may be greater or smaller than the forfeited fees).

to determine the amount of the attorney fee that Smith & DeBonis, LLC is entitled to receive and recover from Four Winds, LLC.

*Appellant's App.* at 59 (emphasis added).

Four Winds asserts that it did not raise the issue of Smith's alleged breach(es) at the hearing before the special master because that subject was beyond the scope of the special master's assignment, which Four Winds maintains was "to determine the amount of fees that Smith was entitled to receive and recover *as a result of the work it performed for Four Winds in the American Express case." Appellant's Reply Br.* at 7–8 (emphasis added). Four Winds' argument is that the alleged breaches occurred *after* Smith was terminated, and the special master was concerned only with the amount of fees that Smith earned *during* the representation. We do not agree with this narrow characterization of the trial court's referral. First, the order states that the special master was to determine the amount of fees that Smith "was entitled to receive and recover," which would not exclude alleged set-off or reduction for breach of fiduciary duty that purportedly occurred after termination. Second, the context of the referral, namely the transcript of the December 2004 hearing, suggests that the trial court referred the attorney fees matter to the special master for him to determine all outstanding fee issues, i.e. the whole purpose of the referral was to reach a determination on the amount of fees owing to Smith. *See Tr.* at 24 (The trial court, expressing frustration about why the alleged set off was not presented to the special master, inquired, "What was the whole point of having the Special Master?"). Accordingly, we find that Four Winds should have raised the matter before the special master.

Four Winds urges that even if it had attempted to introduce evidence of the alleged breach, the special master would not have permitted it. In support for this proposition, Four Winds explains that, at the hearing before the special master, Smith attempted to introduce a piece of the subject correspondence, to illustrate why it was terminated. Four Winds objected, on the grounds that the reason for Smith's termination was irrelevant and beyond the scope of the special master's referral. The special master sustained the objection as being not relevant. Because we do not have a transcript of that hearing, we cannot determine the appropriateness of the special master's ruling in that regard. However, assuming for the moment that the special master's ruling was correct and that the correspondence was irrelevant for the purpose Smith offered it, Four Winds was not thereby absolved of the burden of introducing, or attempting to introduce, evidence regarding its "affirmative defenses" on the matter of attorney fees. *See GKC Indiana Theatres, Inc. v. Elk Retail Investors, LLC.,* 764 N.E.2d 647, 653 (Ind.Ct.App.2002) (proponent bears burden of proof on affirmative defense, which admits the essential allegations of complaint but asserts additional matters barring relief).

Furthermore, we observe that at the trial court's subsequent July 2005 hearing on the special master's report, the court admitted a number of letters of correspondence to and from Smith, which form, in part or in total, the basis of Four Winds' claim that Smith exerted pressure on it with the aim of coercing Four Winds to retain it as counsel on the American Express litigation. Additionally, those letters were attached to a brief Four Winds had filed prior the hearing. *Appellant's App.* at 135–68. The court's August 2005 order, following the hearing, expressly stated that it had read the briefs and considered

the arguments of counsel. Thus, regardless of the fact that Four Winds should have raised the issue of an alleged breach of fiduciary duty to the special master because it affected the attorney fees that Smith "was entitled to receive and recover," the trial court ultimately had before it the subject correspondence to and from Smith that was alleged to constitute the breach of duty. For all these reasons, we conclude that the trial court did not err by not holding a separate hearing on the matter before entering judgment and that a remand for a hearing on Four Winds' claimed breach of fiduciary duty is not required.

### III.  The Lien

In the initial stages of the fee dispute between Four Winds and Smith, Smith retained Four Winds' file of the American Express lawsuit pursuant to its common law right to hold a retaining lien, which our Supreme Court has defined as " 'the right of the attorney to retain possession of a client's documents, money, or other property which comes into the hands of the attorney professionally, until a general balance due him for professional services is paid.' " *Bennett v. NSR, Inc.*, 553 N.E.2d 881, 882 (Ind.Ct.App.1990) (quoting *State ex rel. Shannon v. Hendricks Circuit Court*, 243 Ind. 134, 139, 183 N.E.2d 331, 333 (1962) and citing 7A C.J.S. Attorney & Client 358 (1980) (attorney's retaining liens long recognized in common law as proper)); *see also* Prof. Conduct R. 1.16(d) (allowing attorneys to retain papers of client to extent permitted by law). However, in December 2004, the trial court ordered Smith to turn over the file to Four Winds so that it could continue with its litigation of the American Express case in federal court. In order to provide security to Smith for the value of the unpaid fees, the court granted Smith a lien on the property in the amount of $637,015.70, subject to an exact determination of the amount of fees owing to Smith, which was to be subsequently determined by the appointed special master.

On appeal, Four Winds initially claims that the trial court erred when it placed the lien on the property because it had no legal basis to do so. It argues that our Supreme Court has interpreted Indiana's attorney lien statute, IC 33–43–4–1,[7] to allow an attorney to hold a lien only upon something created by or recovered for the client, pursuant to the same policy that entitles a mechanic to be reimbursed out of that which he improves. *Johnston v. First Fed. Sav. Bank*, 822 N.E.2d 614, 615 (Ind.Ct.App.2005), *trans. denied* (quoting *Booram v. Day*, 216 Ind. 503, 505–06, 25 N.E.2d 329, 330 (1940)); *see also Stroup v. Klump–O'Hannes*, 749 N.E.2d 622, 625 (Ind.Ct.App.2001) (statute authorizes lien upon something created or recovered for client by his attorney). Because Smith did not assist Four Winds in obtaining the subject land, Four Winds claims that Smith may not obtain a lien on it.

Initially, we note that the trial court straddled the horns of a dilemma: Four Winds needed the American Express file in order to continue with the pending federal litigation; however, a trial court may require an attorney to relinquish possession of property subject to a retaining lien *only if* it provides the attorney with adequate security for the claimed unpaid compensation. *Bennett*, 553 N.E.2d at 883 (emphasis added). In this case, the attorney fees amounted to at least half a million dollars, and the property appeared to be

---

7.  IC 33–43–4–1 states, "An attorney practicing law in a court of record in Indiana may hold a lien for the attorney's fees on a judgment rendered in favor of a person employing the attorney to obtain the judgment."

the only asset of adequate value, but IC 33-43-4-1 appears to entitle an attorney to a lien only upon property recovered for a client. *Johnston*, 822 N.E.2d at 616. Four Winds urged that Smith's interests were protected by the lien that Four Winds voluntarily filed in the American Express lawsuit in favor of Smith. However, we agree with Smith that a lien on a contingency case in federal court being tried by another attorney is effectively no security at all. Because Four Winds either did not propose or did not possess adequate security other than the real property, the trial court attempted to fashion a solution that would accommodate both parties.[8]

Because of the posture of this particular case, we need not decide whether any error occurred when the trial court imposed the lien on the land in December 2004 because in August 2005 the trial court entered judgment for Smith, which we have already determined was appropriate. Then, in September 2005, the trial court ordered the removal of the previously-entered judicial lien in the amount of $637,015.70 from Four Winds' property and directed that it be replaced with the August 4, 2005 judgment. Hence, Smith now holds a valid judgment lien upon which it may execute, subject to any trial court orders limiting its ability to do so.[9]

Affirmed.

BAILEY, J., and CRONE, J., concur.

---

8. As we previously noted, the trial court indicated, "This isn't a final thing," meaning that if Four Winds believed that the lien was hampering its ability to obtain financing on the project, it would allow Four Winds a hearing on the matter. *Tr.* at 8.

9. According to the CCS, the trial court, on September 30, 2005, enjoined any action to execute upon the court's judgment for thirty days. *Appellant's App.* at 5.