FILED

Nov 13 2019, 9:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Jon R. Pactor
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Jeremy J. Grogg
Burt Blee Dixon Sutton & Bloom, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Susan Sockrider,

*Appellant-Defendant,*

v.

Burt, Blee, Dixon, Sutton, and Bloom, LLP,

*Appellee-Plaintiff.*

November 13, 2019

Court of Appeals Case No.
19A-PL-1155

Appeal from the Allen Circuit Court

The Honorable Thomas J. Felts, Judge

Trial Court Cause No.
02C01-1901-PL-4

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Susan Sockrider (Sockrider), appeals the trial court's summary judgment in favor of Appellee-Plaintiff, Burt Blee Dixon Sutton & Bloom, LLP (Burt Blee), which concluded that no genuine issue of material fact exists that the parties entered into a valid contingency fee agreement.

We affirm.

# ISSUES

Sockrider raises four issues on appeal, which we consolidate and restate as the following two:

(1) Whether the trial court properly issued summary judgment on Burt Blee's motion for summary judgment on its Complaint for recovery of attorney fees pursuant to a contingency fee contract entered into with its client, Sockrider; and

(2) Whether the trial court properly adjudicated Sockrider's affirmative defenses.

# FACTS AND PROCEDURAL HISTORY

On June 2, 1986, Victor Sockrider (Victor), Sockrider's husband, purchased a life insurance policy (Policy) from First Penn, a subsidiary of Lincoln Financial (Lincoln). On September 13, 2017, Victor requested Lincoln to cancel the Policy and pay him the Policy's surrender value. Upon receiving Victor's request, Lincoln commenced the administrative process of surrendering the

Policy. Approximately one month later, on October 17, 2017, Victor unexpectantly passed away. Sockrider was the sole beneficiary under the Policy at the time Victor died.

[5] On October 19, 2017, two days after Victor's passing and a month after his surrender request, Sockrider, as the Policy's sole beneficiary, contacted Lincoln to submit a claim for the entirety of the death benefits, *i.e.,* $ 100,000, under the Policy. On November 16, 2017, Lincoln issued a denial of benefits. The insurance company asserted that it had processed Sockrider's request on September 25, 2017, which was deemed to be in good order. Lincoln considered the agreement with Victor to surrender the Policy and pay the surrender value to be final and disbursed the surrender value of $1,737.87 to Sockrider.

[6] On March 19, 2018, after unsuccessful attempts to procure the full Policy value from Lincoln, Sockrider contacted Burt Blee to discuss a potential claim against Lincoln. On March 22, 2018, after an initial consultation and review, attorney Jared Baker (Attorney Baker) emailed Sockrider, advising her that, in his estimation, "her claim was properly denied and that, should she proceed in attempting to enforce her death benefit claim, she would likely be unsuccessful and would have a substantial bill from [Burt Blee] to show for it." (Appellant's App. Vol. II, p. 81). Thereafter, on March 28, 2018, Sockrider and Attorney Baker had a discussion on the merits of the case and Sockrider "explicitly indicated that she could not afford that and asked whether [Burt Blee] would take the same on contingency." (Appellant's App. Vol. II, pp. 81-82). On April

3, 2018, "after lengthy discussions within the firm, [Burt Blee] collectively decided that, as a favor to [Victor], a long time client of the firm, and because the case involved an interesting argument to be made, [Burt Blee] would accept the case on a contingency basis, despite the inherent risk of a zero recovery." (Appellant's App. Vol. II, p. 82). Attorney Baker provided Sockrider with a fee agreement (Fee Agreement). After some discussion, "Sockrider asked that [Burt Blee] reduce [the] fee from the standard one-third contingency." (Appellant's App. Vol. II, p. 82). On May 3, 2018, upon receiving Burt Blee's refusal to reduce its contingency fee, Sockrider signed the contingency fee agreement, which provided:

> As compensation for [Burt Blee's] services, the Client shall pay to [Burt Blee] a fee, contingent upon recovery, out of any monies recovered by or for the Client with respect to such claims, as follows:
>
> [Burt Blee] will retain Thirty-Three and One-Third Percent (33 1/3%) of the gross recovery (33 1/3% to be calculated prior to the deduction of expenses, advances or litigation costs) regardless of whether achieved prior to the filing of suit, after the filing of a suit, or commencement of appellate procedures. (While this Agreement addresses the possibility of appellate representation, this Agreement does not bind [Burt Blee] to any future appellate representation.)

(Appellant's App. Vol. II, p. 29).

[7] After researching Sockrider's claims, Burt Blee sent a detailed demand letter to Lincoln, contending Victor's life insurance benefits should be paid in full, rather

than the Policy's surrender value. On July 27, 2018, Lincoln rejected the demand. In light of Lincoln's denial, Burt Blee commenced the process of initiating litigation on behalf of Sockrider, drafting a detailed complaint for relief, breach of contract, and bad faith. On September 6, 2018, prior to Burt Blee filing its complaint, Lincoln informed the law firm that it had reassessed its prior denial and now recommended to disburse the insurance proceeds in full. Thereafter, Lincoln issued a check in the amount of $100,906.40, representing the life insurance benefit plus interest calculated at 1% per annum.

[8] Burt Blee informed Sockrider that it had recovered the funds under the Policy from Lincoln and provided her with a standard disbursement allocation setting forth the attorney fees to be paid to Burt Blee from the insurance benefits per the Fee Agreement and the amount to be disbursed to Sockrider. Sockrider refused to pay the attorney fees, asserting that the contingency fee was unreasonable. Burt Blee tendered the life insurance proceeds in full, subject to an attorney's fee lien, to Sockrider through her present counsel.

[9] On January 2, 2019, Burt Blee filed its Complaint for damages, contending that Sockrider breached the agreement with Burt Blee and demanding payment of its contingency fee, in the amount of $33,635.00. On February 18, 2019, Burt Blee filed its motion for summary judgment, memorandum in support, and designation of evidence. Sockrider filed an opposition to Burt Blee's motion which she amended on March 20, 2019, together with a memorandum and designation of evidence. On April 16, 2019, the trial court conducted a hearing on the motion for summary judgment and granted summary judgment to Burt

Blee, concluding that Sockrider "was bound to pay a contingency fee regardless of whether monies were received *prior to* [Burt Blee] filing suit." (Appellant's App. Vol. II, p. 13). Finding the contingency fee reasonable, the trial court entered final judgment in favor of Burt Blee.

Sockrider now appeals. Additional facts will be provided if necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id*. at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id*. at 608. A fact is 'material' for summary judgment purposes if it helps to prove or disprove an essential element of the plaintiff's cause of action; a factual issue is 'genuine' if the trier of fact is required to resolve an opposing party's different version of the underlying facts. *Ind. Farmers Mut. Ins. Group v. Blaskie*, 727 N.E.2d 13, 15 (Ind. 2000). The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *First Farmers Bank & Trust Co.*, 891 N.E.2d at 607.

[12] We observe that, in the present case, the trial court entered findings of fact and conclusions of law thereon in support of its judgment. Generally, special findings are not required in summary judgment proceedings and are not binding on appeal. *AutoXchange.com. Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 48 (Ind. Ct. App. 2004). However, such findings offer a court valuable insight into the trial court's rationale and facilitate appellate review. *Id*

## II. *Contingency Fee*

[13] Sockrider contends that the trial court erred by granting summary judgment to Burt Blee as there was a genuine issue of material fact that the Fee Agreement entered into between the parties unambiguously allowed Burt Blee to charge a contingency fee for a matter that did not involve litigation.

## A. *Interpretation*

[14] The interpretation and construction of contract provisions is a function for the courts. *Four Winds, LLC v. Smith & DeBonis, LLC*, 854 N.E.2d 70, 74 (Ind. Ct. App. 2006), *trans. denied*. Upon appeal, we will employ the same standard of review as applied by the trial court, that is, unless the terms of the contract are ambiguous, they will be given their plain and ordinary meaning. *Id*. Where the terms of a contract are clear and unambiguous, the terms are conclusive, and we will not construe the contract or look to extrinsic evidence, but will merely apply the contractual provisions. *Id*. The terms of a contract are not ambiguous merely because the parties disagree as to the proper interpretation of the terms. *Id*.

[15] Indiana courts recognize the freedom to enter into contracts and presume that contracts represent the freely bargained agreement of the parties, reflecting the principle that it is in the best interests of the public not to unnecessarily restrict the freedom to contract. *Valparaiso Technical Inst., Inc. v. Porter Co. Treasurer*, 676 N.E.2d 416, 420 (Ind. Ct. App. 1997), *reh'g denied*. Accordingly, contracting parties may enter into any agreement they desire that is not illegal or contrary to public policy. *Id*.

[16] The Indiana Rule of Professional Conduct 1.5(c) authorizes a contingency fee, requiring that the "contingent fee agreement shall be in writing signed by the client and shall state the method by which the fee is to be determined[.]" Here, the written Fee Agreement stated that upon recovery on behalf of Sockrider, Burt Blee is entitled to a one-third fee of the amount recovered, "*regardless of whether achieved prior to the filing of suit*, after the filing of a suit, or commencement of appellate procedures." (Appellant's App. Vol. II, p. 29) (emphasis added). The designated evidence reflects that, although Burt Blee initially refused to represent her because of the prohibitive high hourly rate that would be incurred, upon further research, Burt Blee offered to take the case upon contingency at Sockrider's request and sent her the proposed Fee Agreement. One month later, Sockrider requested a reduction of Burt Blee's contingency fee, and in contemplating the risk involved in Sockrider's claim, combined with the possibility of recovering nothing, Burt Blee declined to reduce its fee. During that same two-month period of time in which Sockrider reviewed the terms of the Fee Agreement, Burt Blee and Sockrider entered into

extensive discussions regarding the nature of a contingency fee agreement. During these discussions, it was clarified that Burt Blee's fees would be taken "out of the amount recovered" and that the law firm could not "take both a contingency fee and [an] hourly fee[.]" (Appellant's App. Vol. II, p. 89). Burt Blee explained that any attorney fees that Lincoln could be requested to pay "would have to be ordered by the court." (Appellant's App. Vol. III, p. 3). In the event of a settlement outside of court, Lincoln could pay attorney fees "but it must be by agreement." (Appellant's App. Vol. III, p. 3). Responding to Sockrider's question as to whether the contingency fee percentage is reasonable, Burt Blee advised that "[i]t is the standard percentage across the nation. Many firms take 40%." (Appellant's App. Vol. III, p. 3).

[17] Though we agree with Sockrider that Burt Blee's Fee Agreement largely contemplates litigation—and the prospect of litigation was precisely the reason a contingency fee agreement was suggested—the Fee Agreement unambiguously indicates that the contingency fee is due upon recovery of any amount regardless of whether, as here, it was achieved prior to filing suit. If, as suggested by Sockrider, the contingency would only be due after litigation, then the subclause of the Fee Agreement—"achieved prior to filing suit"—would be rendered meaningless. *See Forty-One Assocs. v. Bluefield Assocs., L.P.,* 809 N.E.2d 422, 427 (Ind. Ct. App. 2004) (Contract language must be construed "so as not to render any words, phrases, or terms ineffective or meaningless.")

B. *Reasonableness of the Fee*

[18] A contingent fee agreement that is the product of a bargain between the attorney and the client is presumed to be reasonable as between them. *See id*. "The whole point of contingent fees is to remove from the client's shoulders the risk of being out-of-pocket for attorney's fees upon a zero recovery. Instead, the lawyer assumes that risk, and is compensated for it by charging what is (in retrospect) a premium rate." *City of New Albany v. Cotner*, 919 N.E.2d 125, 134-35 (Ind. Ct. App. 2009) (*citing* 1 GEOFFREY C. HAZARD JR., W. WILLIAM HODES, & PETER R. JARVIS, THE LAW OF LAWYERING § 8.6 (3d ed. 2000), *reh'g denied, trans. denied*; *see also Waxman Indus. Inc. v. Trustco Dev. Co.*, 455 N.E.2d 376, 382 (Ind. Ct. App. 1983) ("The benefits of a contingent fee contract between an attorney and client in litigation consisting of money demands are quite obvious. If no money is collected at all, the client is not obligated to pay fees, and in consideration of the absence of such risk, he is willing to pay the larger fee if money is collected. The attorney is willing to risk no recompense for his efforts in return for the possibility of a windfall.").

[19] As to the reasonableness of a contingent fee, "there can be no *per se* objection to contingent fees, so long as the fee was reasonable as of the time it was agreed to, rather than with the benefit of hindsight." *Cotner*, 919 N.E.2d at 135 (*citing* HAZARD, HODES, & JARVIS, supra, § 8.6). In *Vollmar ex. Rel. Vollmar v. Rupright*, 517 N.E.2d 1240, 1244, 1245 (Ind. Ct. App. 1988) (citations omitted), this court reflected:

> It makes little sense to attempt a barn door closing after the fact. Scrutiny may only be reasonably made in consideration of the

factors as they existed and as they were known at the time the contract was entered into. To require court approval of a contingent fee contract but countenance a second-guessing of that arrangement after the fact is to inject such a degree of uncertainty as to virtually destroy the underpinning necessity of the contingent fee in the first instance . . . If the inquiry is made at the outset and before a contract is signed, we acknowledge that many factors which bear upon the reasonableness of a contingent fee and upon the reasonableness of the particular percentage or percentages contemplated cannot be fully known. What may appear to be reasonable at the outset may appear to be unreasonable by reason of subsequent changes in circumstances or unforeseen and fortuitous events. Nevertheless, we do not propose that a contingent fee contract, once approved after due consideration, be re-examined by hindsight. To do so would be to encourage almost certain and endless second guessing in all contingent fee situations.

In *Cotner*, this court addressed the reasonableness of a contingency fee agreement entered into by and between the City of New Albany and a law firm, by which the law firm would be paid a contingency fee of one-third of any amount recovered in the pursuit of collecting certain fees for sewage services provided by the City. *Cotner*, 919 N.E.2d at 128. As a result of the work performed by the law firm, the City collected $900,000 in sewage services. *Id*. at 130. The City refused to pay the contingency fee and litigation ensued. *Id*. The trial court found for the law firm on summary judgment and the City appealed. *Id*. On appeal, we analyzed the contingency fee and concluded that the fee was reasonable. *Id*. at 136. Recognizing that, "as a general matter, a one-third contingent fee is a standard and customary fee," the fact that, in hindsight, the law firm did not have to expend much effort to earn the fee is

"simply not enough to overcome the presumption that the contingent fee is reasonable." *Id.*

[20] Likewise, here, Sockrider does not argue that the Fee Agreement was unreasonable when it was entered into. Pointing to affidavits and designated evidence in an attempt to persuade us that Burt Blee did not expend enough effort to justify the fee, none of its evidence addresses the dispositive issue of whether the contingent fee was unreasonable at the time the fee contract was entered into. After Victor's surrender of the Policy and his unexpected passing, Lincoln repeatedly denied Sockrider's request for payment pursuant to the Policy's terms, as well as Burt Blee's initial demand for payment. It is undeniable that both parties were expecting this case to proceed to litigation and, with this in mind, the parties agreed to the Fee Agreement. Unexpectedly, Lincoln nevertheless agreed to pay under the terms of the Policy on the eve of Burt Blee filing its complaint. Only after Lincoln paid out the Policy's amount did Sockrider take issue with the contingency fee.

[21] In support of her argument that subsequent events may render collection of a fee under a contingency fee agreement unreasonable, Sockrider relies on *Matter of Powell*, 953 N.E.2d 1060 (Ind. 2011); *Matter of Hefron*, 771 N.E.2d 1157 (Ind. 2002); and *Matter of Gerard*, 634 N.E.2d 51 (Ind. 1994). Decided in the context of disciplinary proceedings, our supreme court concluded the attorney fees to be unreasonable based on the particularized circumstances in each case. Upon review, we are unpersuaded of their applicability. In *Powell*, attorney negotiated a contingency fee for a matter that, within two to three days of being accepted,

he knew did not involve a complex issue, did not need a prolonged time commitment, or had any opposition; whereas, in the case at hand, Burt Blee was faced with a difficult legal matter, required an understanding of insurance issues, and faced stiff opposition from the insurance company which had denied Sockrider's earlier requests for payment and had rejected Burt Blee's demand letter. *Powell*, 953 N.E.2d at 1064. In *Hefron*, attorney who agreed to an hourly fee to handle estate, insisted on a contingent fee after discovering substantial assets upon research; whereas Burt Blee rejected the hourly fee and negotiated a contingency fee prior to entering into the Fee Agreement and handling the case. *Hefron*, 771 N.E.2d at 1158. In *Gerard*, attorney negotiated a contingency fee for a matter that was largely administrative and required no specific legal skill; whereas, here, the legal issue and its complications were well documented. *Gerard*, 634 N.E.2d at 54.

[22] In light of the facts before us, we find the contingency fee as negotiated between the parties reasonable. It is undeniable that the Fee Agreement entered into between the parties was the product of a bargain between Burt Blee and Sockrider. Because of the perceived complexity of the underlying matter and the purported opposition by Lincoln, Burt Blee suggested a contingency fee arrangement to remove the financial risk from Sockrider to the law firm. Despite a demand letter, Lincoln refused to pay pursuant to the Policy. On the eve of Burt Blee filing its complaint and bringing this cause to litigation, Lincoln, out of the blue, agreed to pay Sockrider the entire insurance amount. Although Sockrider now urges this court to do so, "[w]ithout more, 20/20

hindsight is simply not enough to overcome the presumption that the contingent fee is reasonable." *See Cotner*, 919 N.E.2d at 136. Accordingly, we affirm the trial court's summary judgment for Burt Blee.[1]

### III. *Affirmative Defenses*

[23] Next, Sockrider contends that the "trial court granted summary judgment for Burt Blee on the affirmative defense of whether the attorney-client contract was invalid for fraud in the inducement. This ruling [] was egregiously wrong because Burt Blee did not raise it as an issue on which it sought summary judgment[.]" (Appellant's Br. p. 30).

[24] In *Reisweg v. Statom*, 926 N.E.2d 26, 30 (Ind. 2010), our supreme court clarified that "[a] party responding to a motion for summary judgment is entitled to take the motion as the moving party frames it." Generally, an affirmative defense is waived "if not asserted in response to a motion for summary judgment that dispose[s] of the entire issue of liability. *Id*. at 32. "A non-movant is not required to address a particular element of a claim unless the moving party has first addressed and presented evidence on that element." *Id*. Here, Burt Blee, as the moving party, moved for summary judgment on the entire issue of breach of contract. As such, Sockrider, as the non-moving party, had to assert all of its

---

[1] Additionally, Sockrider contends that Burt Blee ended its representation and failed to pursue a bad faith claim against Lincoln. However, Lincoln notified Burt Blee that it would pay Sockrider pursuant to the provisions of the Policy prior to Burt Blee being able to file its complaint, which included a bad faith claim. After Lincoln fully paid Sockrider, there was no need to pursue litigation as Burt Blee successfully accomplished what Sockrider had engaged Burt Blee to pursue.

affirmative defenses or risk them being waived. Although Sockrider raised the affirmative defense of constructive fraud in its Answer to Burt Blee's Complaint, Sockrider did not reaffirm the defense in its memorandum of law supporting its response to Burt Blee's motion for summary judgment. In so far as Sockrider now attempts to raise its affirmative defense in her appellate reply brief, we find the issue waived. *See id*.

# CONCLUSION

Based on the foregoing, we hold that the trial court properly entered summary judgment for Burt Blee. Furthermore, due to her failure to raise the affirmative defenses in her response to Burt Blee's motion for summary judgment, Sockrider waived the issue for our review.

Affirmed.

Baker, J. and Bailey, J. concur