Joshua VOLLMAR, by Michael VOLLMAR and Summit Bank, Guardians, Appellants,

v.

Bradley RUPRIGHT, as Personal Representative of the Estates of Amanda Rupright and Susan Rupright, Appellee.

No. 35A02–8604–CV–144.

Court of Appeals of Indiana, Second District.

Jan. 19, 1988.

Christopher C. Myers, Fort Wayne, for appellants.

Vincent J. Heiny, Snouffer, Haller & Colvin, Fort Wayne, for appellee.

SULLIVAN, Judge.

Michael Vollmar and Summit Bank, as guardians of Joshua Vollmar (Joshua), appeal the trial court's decision denying the guardian's petition to set aside an award of attorneys' fees.

We affirm in part and reverse in part.

Susan Rupright and her daughter, Amanda Rupright, were killed in an automobile

accident. Amanda was survived by her husband, Bradley Rupright, and Joshua, her son by an earlier marriage. Bradley petitioned to have himself appointed as personal representative of Susan and Amanda's estates for the purpose of bringing wrongful death actions against the drivers of the other two vehicles involved in the accident. He was appointed and was authorized to administer the estate without court supervision and without bond. He employed William Mills as his attorney to pursue the claims. Mills and Bradley entered into a contingent fee agreement whereby Mills would be paid one-third of any recovery. Mills subsequently employed another attorney, Sherrill Colvin, to aid him in the litigation. Shortly thereafter, the case against one of the drivers was settled for $105,000. The trial court approved payment of one-third of this sum to Colvin and Mills. Michael Vollmar, Joshua's natural father, petitioned the court on Joshua's behalf to set aside the award of attorneys' fees as being clearly excessive.[1] Vollmar and the Bank[2] (hereinafter referred to as Vollmar) now appeal the trial court's denial of that petition.

■ Vollmar first argues that the petition to set aside the fees should have been granted because neither Vollmar nor Joshua was a party to the contingent fee agreement nor were they represented in the negotiations which resulted in the contract. Vollmar concedes that only the personal representative of a decedent has the authority to bring a wrongful death action. *Thomas v. Eads* (1980) 1st Dist.Ind.App., 400 N.E.2d 778. Because they were not parties to the action, it therefore follows that neither Joshua nor Vollmar was required to be a contractual party to the contingent fee arrangement. They had an interest in the outcome of the litigation, but Bradley, as personal representative, remained the only individual who could pursue the claims. If a personal representative is to effectively pursue wrongful death

actions, he must have authority to employ an attorney. To require that all entities with an interest in the prospective res be made parties to fee agreements or be given a voice in the employment of the attorney would undoubtedly result in unreasonable delay and confusion in the resolution of wrongful death claims. Accordingly, the fact that neither Joshua nor Vollmar was a party to the contingent fee agreement does not mandate a setting aside of the award of attorneys' fees.

■ Vollmar next argues that the trial court erred in not admitting certain testimony by the insurance claims adjuster who handled the decedents' claims. Vollmar argues that the testimony was relevant to the question of the reasonableness of the attorney's fees. The questions which were deemed irrelevant by the trial court were as follows:

"Q In your expert opinion, Mr. Mellon, do you believe that had you had the file longer, you could have settled this case?

\*   \*   \*   \*   \*   \*

Q Mr. Mellon, in all your years as an insurance claims adjuster, was there ever a lawsuit filed so quickly as in this case?" Transcript at 10–11.

Because the necessity and reasonableness of the contingent fee contract had not previously been considered by the trial court in terms of the factual setting and circumstance, the questions did seek information relevant, at least minimally, to that issue. It was therefore error to exclude that evidence.

■ In any event, the excluded testimony was cumulative in nature. Mellon's testimony would have implied that the lawsuit was hastily filed. There was ample evidence admitted of record which, if credited, carried the unmistakable inference that the filing of the lawsuit was uncommonly hur-

---

1. Vollmar also sought to set aside approval of a contingent fee in the wrongful death settlement with the second driver. That fee, however, is not at issue in this appeal.

2. The Summit Bank became guardian of Joshua's estate only after the suit against the second driver was settled and the amount of Joshua's estate indicated the practicality of such guardianship.

ried, and that direct and expeditious settlement discussion with the insurer might have made the filing of a complaint unnecessary. There is not ground for reversal in this regard.

■ Vollmar next argues that the evidence presented at the hearing was without conflict and conclusively established that the contingent fee award should have been set aside. The award of attorney fees in probate matters is generally within the sound discretion of the trial court and will not be disturbed absent an abuse of judicial discretion. *Mikesell v. Mikesell* (1982) 4th Dist.Ind.App., 432 N.E.2d 55, *reh. dismissed* 436 N.E.2d 95, reaffirmed this general premise although it approved of the trial court's discretionary reduction of attorney fees. In the case before us the court's award was made pursuant to the contingent fee agreement. Thus, Vollmar's attack is, in essence, an attack upon the validity of the contingent fee contract.

■ In ordinary circumstances, a contingent fee contract is binding between the attorney and his client absent a showing of unconscionability. *Page v. Schrenker* (1982) 4th Dist.Ind.App., 439 N.E.2d 694.[3]

In one sense, Bradley Rupright is like the usual client in a contingent fee situation. He is a personal representative of an estate yet to be acquired. The estate may be acquired only through the efforts of the attorney in asserting the wrongful death claim. Those efforts may or may not prove to be successful. In this sense, the facts as they may have appeared in the preliminary stages of this controversy would seem to make a contingent fee arrangement appropriate.

■ In another sense, however, he is unlike the usual client. That portion of wrongful death proceeds not representing medical, hospital, funeral and burial expenses inures to the exclusive benefit of the widow or widower and the dependent children or dependent next of kin, and is not subject to the claims of creditors. I.C.

34-1-1-2 (Burns Code Ed.Repl.1986). Accordingly, it might be reasonably argued that a dependent child in such circumstance is much more directly interested in the arrangement for attorney fees than would be a normal distributee in an estate. In this sense, the personal representative is a trustee for the benefit of the distributee and in the hiring of counsel does not act in his individual capacity or for his own benefit. *Thomas v. Eads, supra,* 400 N.E.2d 778. Bradley had an obligation with respect to the interests of Joshua in addition to his own interests as a prospective distributee.

■ Given the extraordinary fiduciary nature of the personal representative's responsibility in wrongful death matters, his activities and those of his attorney must be totally circumspect. *See Diaz v. Duncan* (1980) 4th Dist.Ind.App., 406 N.E.2d 991 at 1002. He may, of course, enter into a contingent fee arrangement if such is the only practical way in which a distributable estate might be acquired. Any such contract, however, should be necessary and fair under the existent circumstances.

■ It makes little sense to attempt a barn door closing after the fact. Scrutiny may only be reasonably made in consideration of the factors as they existed and as they were known at the time the contract was entered into. *In re Gamble* (Fla.Dist. Ct.App.1983) 436 So.2d 173, *rev'd on other grounds, Gamble v. Wells* (Fla.1984) 450 So.2d 850; *Phillips v. Nationwide Mutual Insurance Co.* (Fla.Dist.Ct.App.1977) 347 So.2d 465; *contra Nixon v. Bryson* (Fla. Dist.Ct.App.1986) 488 So.2d 607. To require court approval of a contingent fee contract but countenance a second-guessing of that arrangement after the fact is to inject such a degree of uncertainty as to virtually destroy the underpinning necessity of the contingent fee contract in the first instance.

■ Accordingly any proposed contingent fee contract should be submitted for

---

**3.** Contingent fee contracts are strictly prohibited in criminal cases and in domestic relations matters if premised upon the obtaining of a dissolution or upon the amount of alimony, support or property distribution acquired. Ind.Rules of Professional Conduct, Rule 1.5(d) (West 1987).

approval by the court before its execution and the court should carefully consider all the circumstances which are known or reasonably ascertainable at the time. *See Leonard C. Arnold, Ltd. v. Northern Trust Co.* (1987) 116 Ill.2d 157, 107 Ill.Dec. 224, 227, 506 N.E.2d 1279, 1282.

In the case before us, the fee contract was executed within a week following the death of Susan and was not brought to the court's attention until the wrongful death settlement had been agreed upon and was submitted for approval. Furthermore, the record indicates that no inquiry concerning the necessity or the fairness of the particular fee arrangement was made until the hearing upon Vollmar's petition to set the fee award aside. We suggest that this is extremely late in the process to make the requisite determination.

If the inquiry is made at the outset and before a contract is signed, we acknowledge that many factors which bear upon the reasonableness of a contingent fee and upon the reasonableness of the particular percentage or percentages contemplated cannot be fully known.[4] What may appear to be reasonable at the outset may appear to be unreasonable by reason of subsequent changes in circumstances or unforeseen and fortuitous events. Nevertheless, we do not propose that a contingent fee contract, once approved after due consideration, be re-examined by hindsight. To do so would be to encourage almost certain and endless second guessing in all contingent fee contract situations.

■ Recognizing that there is some possible unfavorable effect upon distributees in not permitting re-examination of fee agreements, if the initial determination is made as a result of thorough and straightforward presentation of the alternatives, of the factors which are likely to be involved in the litigation and of other relevant matters, it is entitled to some expectation of validity.

■ We are unable to find any rational distinction between a contingent fee which is found to be fair and equitable as to an adult distributee and an identical fee in the same wrongful death action when considered as to a minor distributee. The fee is either fair and reasonable or it is not. For this reason we decline to follow cases which honor a reasonable contingent fee contract as to adults but reduce the fee as to minors. E.g., *Cappel v. Adams* (5th Cir.1970), 434 F.2d 1278; *Donnarumma v. Barracuda Tanker Corp.* (C.D.Cal.1978) 79 F.R.D. 455; *Abel v. Tisdale* (Okla.1980), 619 P.2d 608.

■ It is not enough to say that adults have the freedom to contract for a fee. *See Lutz v. Belli* (1987) 1st Dist.Ind.App., 516 N.E.2d 95 (Ratliff, C.J. concurring). The fact remains that when the situation is not strictly a one-on-one attorney-client relationship, the prospective arrangement should be examined for fundamental fairness.

■ In this regard it is extremely important that when a contingent fee contract is contemplated, a complete and factual advisement and disclosure be made to the personal representative by the attorney. It is important that the personal representative be fully apprised at the time he seeks the court's approval of the proposed contract.

■ In determining whether the contract was reasonable when made, we must look to the advisements given by the attorney to the personal representative with respect to alternatives and with respect to the various factors which are usually considered in establishing a reasonable fee. Absent evidence that the personal representative was fully advised by the attorney and absent a written contract, the courts may not approve a contingent fee arrangement.

■ In the case before us the trial court excluded evidence of the attorney's consultation with Bradley on grounds that it was privileged. Such exclusion was erroneous.

---

**4.** No issue is before us as to whether it is unreasonable per se for attorneys to charge the same percentage for cases settled before suit is filed as for settlements after suit or after trial.

It must be first observed that the particular communication involved the employment contract itself. It presumably took place prior to or contemporaneous with the execution of the contract. In this light, we are unwilling to say that the attorney-client relationship had been sufficiently established as to trigger the privilege, at least with respect to the formation of the relationship itself. *Jennings v. Sturdevant* (1895) 140 Ind. 641, 40 N.E. 61. Furthermore, as a general proposition, an attorney may be questioned as to his fee and the contract therefor since such matters are deemed to be facts known by the attorney and are not held to be confidential communications. 81 Am.Jur.2d *Witnesses* § 215 (1976).

Be that as it may, the duty to insure the necessity and facial fairness of a contingent fee contract in wrongful death estate situations compels the conclusion that the understanding and awareness of the parties to the contract be explored.

Bradley was not called as a witness. Had he been present, he might have waived any arguable privilege as to communications from his counsel. That fact, however, does not insulate the fee arrangement and the circumstances of its formulation from judicial scrutiny. As earlier stated, necessity and fairness are very relevant in situations where the burden of the fee will be borne, at least in part, by persons not party to the agreement itself.

■ We hold that the court erred in excluding evidence of the advisements surrounding execution of the contingent fee contract. That error, however, does not require reversal under the facts of this case, if upon review it appears that the trial court did not abuse its discretion in rejecting Vollmar's petition to reduce the

fee. Stated differently, failure to carefully consider the propriety of the contingent fee contract when made and whether Bradley was fully informed as to all aspects of the arrangement does not render the fee agreement unreasonable or unconscionable.

■ Notwithstanding the foregoing criticism of the chronology and procedure followed, we do not view the evidence to compel reversal. That evidence does not lead unerringly to the conclusion that the fee arrangement was unconscionable or unreasonable, even as the circumstances became known at the time of the hearing and even were we to employ the hindsight approach earlier disavowed.

The evidence supporting the contingent fee indicates that at the time the contract was made there were several unknown factors. The extent of comparative fault attributable to all prospective parties, the extent to which each prospective defendant was insured, and the fact that decedents left no distributable property other than the wrongful death claim, all tend to militate in favor of a contingent fee arrangement. Furthermore, the evidence which was developed at the hearing upon Vollmar's petition reflected extensive investigation and preparation for litigation or settlement negotiations.

In the final analysis of the case before us, we are unable to conclude from the facts of record that the trial court's refusal to reduce the amount of attorney fees was erroneous as a matter of law. While it may not have been inappropriate for the court to have reduced the fee (at least with respect to the share of the proceeds payable to Joshua) and to have awarded a fee premised upon the usual factors considered in awarding a reasonable fee,[5] we cannot

---

**5.** In *Rosquist v. Soo Line R.R.* (7th Cir.1982) 692 F.2d 1107, 1113 n. 9 (quoting *Carter v. Montgomery Ward & Co.* (E.D.Tenn.1977) 76 F.R.D. 565, 569), the Seventh Circuit affirmed a reduction of fees in an analogous situation and enumerated the factors to be considered in a determination of reasonableness as follows:

"(a) the time and labor required;
(b) the novelty and difficulty of the questions presented (both factual and legal);

(c) the skill requisite to perform the legal services properly;
(d) the preclusion of other employment by the attorney due to acceptance of the case;
(e) the customary fee;
(f) whether the fee is fixed or contingent;
(g) time limitations imposed by the client or the circumstances;
(h) the amount involved and the results obtained;

say the court abused its discretion in this case when upon review it validated the contingent fee as to the total wrongful death recovery.

■ Vollmar finally argues that the trial court erred in ordering seven percent of the settlement monies payable to Joshua retained to cover the anticipated fees and costs in the event that Joshua filed an appeal. The Estate argues that the personal representative is entitled to have his attorneys' fees paid out of the sums recovered in settling the wrongful death claim. We agree that the attorneys' fees incurred by the personal representative in pursuing the wrongful death actions and in defending a recovery should be paid from those monies recovered. To hold otherwise would discourage individuals from accepting appointment as personal representatives. However, the money used to pay the attorneys' fees of the personal representative should not be deducted from the share of a specific beneficiary but rather from the total sum recovered prior to division among the beneficiaries. In this case, if Vollmar had been successful on appeal the reduction in the attorneys' fees awarded would have benefitted both beneficiaries (Joshua and Bradley) equally. To allow Bradley to enjoy the benefits of a reduction in attorneys' fees without incurring any of the cost of the pursuit of such a reduction clearly would be inequitable. While in this case Bradley holds the dual role of beneficiary and personal representative, this does not mean that funds destined for Bradley as a beneficiary are immune from payment of fees incurred by Bradley as personal representative.

■ We recognize that there may be situations in which one beneficiary insists upon bringing meritless actions which ultimately result in the depletion of the funds available for all beneficiaries. In such situations, it may be proper to impose fees against the beneficiary or the attorney responsible for the litigation. The Estate contends that such a situation exists in this

case and argues that the fees should be assessed against Vollmar's attorney. Vollmar's attorney responds by requesting that attorneys' fees be assessed against the Estate's attorneys because of "outrageous misstatements of fact" made in the Estate's brief. In both instances, the requests for penalties are the denouements of acrimonious briefs filled with charges and countercharges which neither enlighten this court nor enhance the professional presentation of issues. Nevertheless, it becomes clear that this appeal was based upon a good-faith belief that the attorneys' fees awarded were excessive. It is an unfortunate fact of the legal profession that parties sometimes feel compelled to bring these actions. It is equally regrettable that in seeking to reduce legal fees, parties are forced to incur even greater legal fees with no guarantee of success. And in this case it is most discouraging that the effort to reduce fees has resulted in the depletion of funds intended for a minor child whose mother has been taken from him. However, we see nothing in the conduct of either the parties to this action or their counsel which would warrant a departure from the traditional rule that the parties to litigation pay their own attorneys' fees.

The trial court's denial of the petition to vacate the award of attorneys' fees is affirmed. The trial court's order retaining seven percent of the wrongful death monies payable to Joshua is reversed and the trial court is instructed to order payment of the personal representative's costs of defending this appeal out of all sums recovered in the wrongful death actions. Both parties' requests for sanctions are denied.

Subject to our order concerning the retained funds and payment of costs and fees therefrom, costs of this appeal are assessed against appellants.

BUCHANAN and MILLER, JJ., concur.

---

(i) the expertise, reputation, and ability of the attorney;
(j) the 'undesirability' of the case;

(k) the nature and length of the professional relationship with the client; and
(l) the amount of awards in similar cases."