**The CITY OF NEW ALBANY,**
**Appellant–Petitioner,**

v.

**K. Lee COTNER, Richard R. Fox, Steve Gustafson and Law Offices of Fox & Cotner, Appellees–Respondents.**

No. 22A01–0904–CV–175.

Court of Appeals of Indiana.

Dec. 30, 2009.

Rehearing Denied March 5, 2010.

Derrick H. Wilson, Mattox & Wilson, LLP, New Albany, IN, Attorney for Appellant.

Garret B. Hannegan, Morgan & Pottinger, P.S.C., Louisville, KY, Attorney for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary

K. Lee Cotner, Richard R. Fox, Steve Gustafson, and the Law Offices of Fox & Cotner (collectively, "Fox & Cotner") represented the City of New Albany ("the City") in connection with its sewer fee dispute with the Town of Georgetown

("Georgetown") on a contingency fee basis. Georgetown ultimately paid the City pursuant to a settlement agreement, but the City refused to pay Fox & Cotner the contingent fee based on the entire amount of the settlement and instead sued Fox & Cotner for a determination of whether a valid fee contract existed, and if so, whether the fee was reasonable. Fox & Cotner counterclaimed for enforcement of the fee contract. The City now appeals from the trial court's grant of summary judgment in favor of Fox & Cotner. Specifically, the City contends that the scope of Fox & Corner's representation, whether estoppel applies, and the reasonableness of the fee are genuine issues of material fact that preclude the entry of summary judgment in favor of Fox & Cotner. We affirm.

## Facts and Procedural History

In 1992 the City and Georgetown entered into a Sewage Treatment Agreement ("sewage contract") in which the City agreed to treat wastewater generated or transported by Georgetown's sewer system. The sewage contract included provisions regarding sewage treatment capacity, daily flow allowances, rates and charges, sewer connection fees, penalties for excess sewage flow, and the amounts to be contributed by Georgetown in the event of capital improvements. In 1999 the City retained Fox & Cotner to represent the City in collecting sewer fees from Georgetown. The terms of the representation were reduced to writing in a letter ("letter" or "fee contract") dated July 30, 1999, from Fox & Cotner to Lee Buchanan, the City Attorney at the time. The pertinent part of the letter states:

> This letter will confirm my understanding of the terms of our representation of the City of New Albany in its sewer fee dispute with Georgetown.
>
> We will charge the City a contingent attorney fee of one third of whatever we

are ultimately able to collect from Georgetown.

Appellant's App. p. 49. Fox & Cotner subsequently filed a complaint for breach of the sewage contract against Georgetown on behalf of the City in August 1999 seeking the recovery of back sewer fees, penalties as a result of Georgetown sending an average daily flow in excess of the amount to which it was entitled under the sewage contract, unpaid connection fees, and attorney's fees. Fox & Cotner drafted internal memos in 2003 discussing the City's claims, Georgetown's defenses, and the need to retain experts, pull records, and perform discovery. *Id.* at 301–09.

In 2003 the City hired Greg Fifer as the attorney for the New Albany Sewer Board ("Sewer Board") and paid him on an hourly basis with regards to the sewer litigation. He filed his appearance on behalf of the City in September 2003 and filed an amended complaint in January 2004. Most significantly, he removed the claim for penalties and added two new claims for capital improvements. The first claim for capital improvements related to upgrades to the sewer infrastructure connecting Georgetown to the City's system required in order for the City to achieve or maintain compliance with applicable environmental regulatory requirements, provided that Georgetown's capacity remained at an average daily flow of 226,000 gallons per day ("gpd") as provided in the sewage contract. *Id.* at 56. The second claim for capital improvements related to upgrades to the sewer infrastructure connecting Georgetown to the City's system in order to increase Georgetown's capacity from an average daily flow of 226,000 to 500,000 gpd. Id. at 58. Fifer did not file these new claims in a separate lawsuit. In his deposition, Gustafson, an attorney for Fox & Cotner, explained that the sewage contract addressed Georgetown's excess sewage

flow by requiring Georgetown to either pay the City a penalty or pay the City to expand the City's sewer system:

It is—again, my understanding is that the [sewage] contract, like I say, attempted to deal with the issue of what happens if Georgetown is sending more sewage than the contract anticipated them sending and said basically if you do this, you will have to pay a penalty at this rate; however, we will forego the penalty if you make a capital improvement to expand the New Albany system.

*Id.* at 389. Specifically, the sewage contract included the following provision:

4. In the event that the Town increases its average daily flow above 226,000 GPD or its peak flow rate above 711,000 GPD without prior written agreement as required in paragraph 3 above then the Town shall make five times the monthly payments to the City as specified in paragraph 1 above. If and when, however, the Town commits to the City in writing to pay for its pro-rata cost of any necessary plant expansion so as to increase its average daily flow above 226,000 GPD or its peak flow rate above 711,000 GPD as contemplated in paragraph 1 above, THEN the aforementioned penalty of five times the monthly payments to the City shall cease to be due and the Town shall only be responsible for the amount due under paragraph 1 above. Regardless of written notice, no penalty of five times the monthly payment shall be assessed to, or due from, the Town from the point where a plant expansion requested in writing by Georgetown enters the design phase.

*Id.* at 281. After Fifer filed the amended complaint, Fox & Cotner proposed a new fee contract with the City ("proposed contract"). According to Fox & Cotner, it proposed the new fee contract in part because it had lost the original fee contract and wanted something in writing to ensure payment and in part because it was willing to compromise on the fee in order to avoid any potential argument related to the fee since the City also had to pay Fifer. The proposed contract provided for a one-third contingent fee for collection of back sewer fees and a one-tenth contingent fee for the recovery of unpaid connection fees and capital improvements. The City rejected the proposed contract, thus leaving the original fee contract in place. The City never terminated Fox & Corner's representation nor limited the scope of the representation to the matters and claims asserted in the original complaint.

In 2004 the City and Georgetown submitted the case to mediation, and Fifer and Fox & Cotner appeared at the mediation as representatives of the City. The parties reached an agreement in March 2005 which required Georgetown to pay the City: (1) $1,948,347 for capital improvements that would guarantee Georgetown an increased average daily flow of 500,000 gpd and (2) $100,000 in full satisfaction of Georgetown's obligation for back sewer fees. Affidavits from Fifer and Bill Utz, a member of the Sewer Board, indicate that Fox & Cotner raised no objection to the $100,000 settlement for back sewer fees. *Id.* at 311, 458.

In December 2005 the City filed, in the underlying case, a complaint against Fox & Cotner, which sought a determination of whether a valid fee contract existed, and if so, whether the fee was reasonable. In February 2006 Fox & Cotner answered the complaint and counterclaimed for enforcement of the fee contract, that is, its contingent fee of one-third of the entire settlement proceeds. The fee contract, which had apparently been found, was attached as an exhibit to the counterclaim.

In the meantime, Georgetown decided it would construct its own wastewater treat-

ment plant while continuing to receive wastewater treatment and transportation services from the City until its completion. Consequently, the settlement agreement was amended in August 2006 so that Georgetown would revert back to being entitled to discharge an average daily flow of only 226,000 gpd and the City's obligation to construct new capacity improvements for the benefit of Georgetown was terminated. Instead of $1,948,347 for capital improvements, Georgetown was to pay the City $800,000 in "full consideration of its remaining payment obligations."[1] Id. at 95. Taking both the March 2005 settlement agreement and August 2006 amendment together, then, Georgetown had a total payment obligation to the City of $900,000: $100,000 as payment for back sewer fees and $800,000 as payment for its "remaining payment obligations."

Fox & Corner filed a motion for partial summary judgment, and the City timely filed a brief and designations in opposition to the motion. After a hearing on the motion, at which Fox & Corner advised the trial court that it was seeking summary judgment dispositive of all issues in the case, the trial court granted summary judgment in favor of Fox & Corner and ordered the City to pay Fox & Corner $300,000, one-third of the entire amount the City collected from Georgetown, with interest. The City then filed a motion to correct errors, which was denied following a hearing. The City now appeals.

## Discussion and Decision

■ On appeal, the City contends that the scope of the fee contract between the parties, whether estoppel applies, and the reasonableness of the fee are genuine issues of material fact that preclude the entry of summary judgment in favor of Fox & Cotner. The law of summary judgment is well established. The purpose of summary judgment under Indiana Trial Rule 56 is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *Bushong v. Williamson,* 790 N.E.2d 467, 474 (Ind.2003). Our standard of review is the same as that of the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Williams v. Riverside Cnty. Corr. Corp.,* 846 N.E.2d 738, 743 (Ind.Ct.App. 2006), *trans. denied.* We construe all facts and reasonable inferences drawn from those facts in favor of the non-moving party. Id. On appeal, the trial court's order granting or denying a motion for summary judgment is cloaked with a presumption of validity. *Sizemore v. Erie Ins. Exch.,* 789 N.E.2d 1037, 1038 (Ind.Ct. App.2003). A party appealing from an order granting summary judgment has the burden of persuading the appellate tribunal that the decision was erroneous. Id. at 1038–39. We will affirm the grant of summary judgment on any legal basis supported by the designated evidence. *Bank One Trust No. 386 v. Zem, Inc.,* 809 N.E.2d 873, 878 (Ind.Ct.App.2004), *trans. denied.* But we carefully review a sum-

---

1. Although Gustafson's deposition testimony reveals his understanding that the payment obligations for capital improvements and back sewer fees were apportioned in a way to make the settlement deal "more politically pal[at]able to the folks at Georgetown" and that the allocations were "more or less arbitrary," Appellant's App. p. 393, Utz states in his affidavit that "[t]he capital improvement issue was a separate issue and discussions pertaining to the capital improvements had no bearing upon my decision to settle the issue of the back sewage fees whatsoever," id. at 458. In light of our standard of review, which requires us to construe all facts and reasonable inferences drawn from those facts in favor of the non-moving party, we are constrained to believe Utz.

mary judgment decision to ensure that a party was not improperly denied its day in court. *Poznanski ex rel. Poznanski v. Horvath,* 788 N.E.2d 1255, 1258 (Ind.2003). The trial court entered a judgment containing findings of fact and conclusions of law. This, however, does not change the nature of our review on summary judgment. In the summary judgment context, the entry of specific facts and conclusions aids our review by providing us with a statement of reasons for the trial court's decision, but it has no other effect. *Spears v. Blackwell,* 666 N.E.2d 974, 976 (Ind.Ct. App.1996), *reh'g denied, trans. denied.*

### I. Scope of the Representation

The City first contends that the scope of Fox & Corner's representation did not include claims for capital improvements, and further, the City never modified the scope of Fox & Corner's representation to include capital improvements.[2] We first address the meaning of the term "sewer fee dispute" as used in the fee contract to determine the scope of Fox & Cotner's representation. We then discuss the proposed contract submitted to and rejected by the City, which the City pres-

ents as evidence that the scope of Fox & Corner's representation was never modified to include capital improvement claims.

To determine the scope of the representation, we must look to the fee contract. The construction of the terms of a written contract is a pure question of law, and we must thus conduct a *de novo* review of the trial court's decision to grant Fox & Corner's motion for summary judgment. *See Avant v. Cmty. Hosp.,* 826 N.E.2d 7, 10 (Ind.Ct.App.2005), *trans. denied.* When a trial court has entered summary judgment based upon the construction of a written contract, it has determined either that: (1) the contract is not ambiguous or uncertain as a matter of law and the trial court need only apply the terms of the contract or (2) the contract is ambiguous, but the ambiguity may be resolved without the aid of factual determinations. *Stewart v. TT Commercial One, LLC,* 911 N.E.2d 51, 55 (Ind.Ct.App.2009), *trans. denied; see Ancich v. Mobil Oil Corp.,* 422 N.E.2d 1320, 1322 (Ind.Ct.App. 1981) ("If ... the ambiguity arises, not because of extrinsic facts, but by reason of the language used, construction of the am-

---

**2.** The City's additional arguments regarding the scope of the representation are that "the evidence was disputed as to the effect of Georgetown's counter-claim on the scope of representation," Appellant's Br. p. 27 (capitalization omitted), the trial court's reliance on *Vollmar ex rel. Vollmar v. Rupright,* 517 N.E.2d 1240 (Ind.Ct.App.1988), was misplaced, Appellant's Br. p. 27, and "the trial court erred in finding a legal difference between an amended versus supplemental complaint," *id.* at 30 (capitalization omitted).

In a summary judgment motion, "[a] fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth or if the undisputed material facts support conflicting reasonable inferences." *Williams v. Tharp,* 914 N.E.2d 756, 761 (Ind.2009) (citations omitted). Regarding the counterclaim

and the difference between an amended and a supplemental complaint, the City merely highlights aspects of the trial court's findings that it believes are wrong while conceding that they are irrelevant. Appellant's Br. p. 27 ("Whether Fox & Corner agreed to handle the defense of the Counter-Claim is irrelevant to the determination as to whether the requested fees are reasonable or whether the parties' fee agreement included the capital improvement claims."), 30 ("[T]here is no legal difference between an amendment under 15(A) and a supplemental pleading under 15(D)."). As both of these issues are immaterial and thus, irrelevant in determining whether summary judgment for Fox & Cotner was proper, we decline to address them.

We discuss *Vollmar* later in this opinion as we find that it relates more directly to the reasonableness of Fox & Cotner's fee.

biguous contract is a question of law for the trial court.").

Fox & Corner's letter to the City stated Fox & Corner's understanding that it was being retained in connection with the City's "sewer fee dispute" with Georgetown. The agreement further provided that Fox & Corner would receive a one-third contingent fee. On appeal, there is no dispute that this letter served as the contract between the parties.[3] The meaning of the term "sewer fee dispute," then, establishes the scope of Fox & Corner's representation. We must therefore determine whether the term as used in the fee contract is ambiguous. A "dispute" is defined as "[a] conflict or controversy, esp. one that has given rise to a particular lawsuit." BLACK'S LAW DICTIONARY 505 (8th ed.2004). A "fee" is defined as "[a] charge for labor or services, esp. professional services." *Id.* at 647. Thus, all we may determine by looking within the four corners of the contract is that the scope of Fox & Corner's representation includes matters pertaining to the controversy between the City and Georgetown regarding charges for sewer services. Without looking outside the four corners of the contract, it is impossible to determine whether capital improvements to the sewer system are included in charges for sewer services. We thus conclude that "sewer fee dispute" is ambiguous.

This ambiguity, however, may be resolved by looking to the undisputed evidence designated by the parties. All of the designated evidence points to the fact that "sewer fee dispute" generally involved the enforcement of the sewage contract; specifically, the collection of back sewer fees, unpaid connection fees, *and* penalties

for excess flow under the terms of the contract. *See, e.g.,* Appellant's App. p. 270 (affidavit of Buchanan, the City Attorney who negotiated the fee contract with Fox & Corner, stating that he outlined each specific claim for Fox & Corner in a letter, which became the basis of the original complaint), 295 (original complaint for breach of contract, which includes a claim for penalties for excess flow), 383 (Gustafson stating at his deposition that his understanding of "sewer fee dispute" included a claim for penalties for excess flow). The purpose of the fee contract was to enforce the sewage contract, and under the undisputed terms of the sewage contract, Georgetown's excess flow could be addressed by either paying penalties or contributing money toward capital improvements. Thus, penalties and capital improvements are two sides of the same coin. The City suggests that because no claim for capital improvements yet existed at the time the fee contract was created, we should conclude that the scope of Fox & Corner's representation did not include claims for capital improvements. We disagree. The "sewer fee dispute" encompassed the issue of penalties for excess flow and thus, in accordance with the sewage contract, also encompassed its alternative of monetary contributions toward capital improvements. The trial court did not err in so determining.

◼ Because we find that the original fee contract included capital improvements as part of the scope of the representation, we need not address the City's argument that the City never changed the scope of the representation to include capital improvements. However, within this argument, the City implicitly argues that

---

**3.** The letter is not signed by the City. Appellant's App. p. 49. We note that Indiana Professional Conduct Rule 1.5(c) provides that "[a] contingent fee agreement shall be in a writing signed by the client." On appeal, however, the City does not raise the validity of the contingent fee agreement.

because Fox & Cotner proposed a new contract to the City that provided for a one-third contingency fee for the collection of back sewer fees and a one-tenth contingency fee for the recovery of unpaid connection fees and capital improvements, there is a reasonable inference that capital improvement claims were not included in the scope of the original fee contract. But the uncontroverted evidence shows that before the case was settled with Georgetown, Fox & Cotner submitted the proposed contract to solve two problems: (1) Fox & Cotner had lost the original fee contract and wanted something in writing to ensure payment and (2) Fox & Cotner was willing to compromise to avoid any potential argument related to the fee since the City also had to pay Fifer. Cotner stated at his deposition:

> And then, if I remember correctly, we met in executive session with the sewer board. And they didn't think they would pay us anything on a contingency fee and that there was no written agreement.
>
> And then I remember specifically after the meeting talking to Mark Seabrook and said, "We're going to be entitled to one-third of everything if a contract turns up. What are you guys going to do if a contract turns up?"
>
> And Mark says, "I guess we'll pay you."
>
> So this was more of a negotiation to just get in writing and get something memorializing our agreement, and we were willing to do that at that time.[4]

*Id.* at 371.

On appeal, the non-moving party bears the burden of persuasion and must specifically point to the disputed material facts *and the designated evidence pertaining thereto*. *Meisenhelder v. Zipp Express, Inc.*, 788 N.E.2d 924, 927 (Ind.Ct.App. 2003) (emphasis added). Although the City argues that the mere existence of the proposed contract leads to a reasonable inference that the scope of the fee contract did not include claims for capital improvements, it cites no evidence to dispute Fox & Corner's reasons for submitting the proposed contract. The City's claim thus fails. Because it is undisputed that the Sewer Board rejected the proposed contract and Fox & Cotner subsequently found the original contract, the original contract controls.

## II. Estoppel

The City next contends that whether equitable estoppel applies is a genuine issue of material fact that precludes summary judgment. Specifically, it argues that estoppel should bar Fox & Cotner from claiming any attorney's fees for capital improvements because, at the mediation, Fox & Cotner raised no objections to the $100,000 settlement for back sewer fees. An equitable estoppel requires a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice. *Ebersol v. Mishler*, 775 N.E.2d 373, 378 (Ind.Ct.App.2002), *trans. denied.* Equitable estoppel may arise from silence or

---

4. Although the City states that "a Board speaks as a body, not by the individual comments of its members," Appellant's Reply Br. p. 6, we quote Mark Seabrook's comment only as further indication that the Sewer Board rejected the proposed contract knowing the original fee contract might be found. There are no facts in the record from which we can draw any contrary inferences.

acquiescence as well as from positive conduct. *Id.* at 379. However, silence will not form the basis of an estoppel unless the silent party has a duty to speak. *See Sheraton Corp. of Am. v. Kingsford Packing Co., Inc.*, 162 Ind.App. 470, 319 N.E.2d 852, 856 (1974) ("It is settled law in this State that the representation of fact necessary to such an estoppel may be accomplished by the conduct of a party, using the word 'conduct' in its broadest meaning as including his spoken words, his positive acts, and *his silence when there is a duty to speak.*" (quotation omitted) (emphasis added)).

The heart of the City's estoppel argument appears to be that Fox & Corner had a duty to tell the City at the mediation that it was asserting a claim for one-third of the entire settlement proceeds but instead was silent. The City argues that because Fox & Corner was aware before the mediation that the City rejected its proposed contract for a one-third contingent fee for collection of back sewer fees and a one-tenth contingent fee for capital improvements and the recovery of unpaid connection fees, Appellant's Reply Br. p. 5, Fox & Corner should have notified the City at the mediation that it was going to assert its contingent fee against the capital improvements claims, *id.* at 6, and because there was no such notification, the City relied on Fox & Corner's acceptance of the $100,000 settlement to its detriment, *id.*

Initially, we note that the City, without citation to authority, asserts that Fox & Corner had a duty to inform the City that it was going to assert its contingent fee against the capital improvement claims. However, even if we assume such a duty

exists, the City must show that the City was without knowledge or the means of knowledge of the real facts. Here, the City knew of Fox & Corner's claim for contingent fees on the capital improvements claims. Fox & Corner had attempted to renegotiate its fees with the City before the mediation but was unable to do so when the City rejected the proposed contract. The City was well aware that Fox & Corner had lost the original contract, but intended, if the contract was found, to assert its claim for a one-third contingency fee on the entire amount recovered. The City thus cannot support its allegation that it was without knowledge or the means of knowledge that Fox & Corner might assert its right to the fees.[5] The facts simply do not support an argument for estoppel.

### III. Reasonableness of the Fee

■ Finally, the City contends that the fee is unreasonable. Indiana courts recognize the freedom to enter into contracts and presume that contracts represent the freely bargained agreement of the parties, reflecting the principle that it is in the best interests of the public not to unnecessarily restrict the freedom to contract. *Valparaiso Technical Inst., Inc. v. Porter County Treasurer*, 676 N.E.2d 416, 420 (Ind.Ct.App.1997), *reh'g denied.* Accordingly, contracting parties may enter into any agreement they desire that is not illegal or contrary to public policy. *Id.* A contingent fee agreement in a collection case that is the product of a bargain between the attorney and the client is presumed to be reasonable as between them. *Id.* "The whole point of contingent fees is to remove from the client's shoulders the risk of being out-of-pocket for attorney's

**5.** The City points to evidence that the City asked Fox & Cotner if it had any objection to the $100,000 settlement for back sewer fees, and Fox & Cotner indicated that it did not. However, the designated evidence does not show that anyone specifically asked Fox & Cotner the more relevant question of whether it was claiming its contingent fee against the $100,000 settlement for back sewer fees or against the entire settlement proceeds.

fees upon a zero recovery. Instead, *the lawyer* assumes that risk, and is compensated for it by charging what is (in retrospect) a premium rate." 1 Geoffrey C. Hazard, Jr., W. William Hodes, & Peter R. Jarvis, The Law of Lawyering § 8.6 (3d ed.2000); *see also Waxman Indus., Inc. v. Trustco Dev. Co.,* 455 N.E.2d 376, 382 (Ind.Ct.App.1983) ("The benefits of a contingent fee contract between an attorney and client in litigation consisting of money demands are quite obvious. If no money is collected at all, the client is not obligated to pay fees, and in consideration of the absence of such risk, he is willing to pay the larger fee if money is collected. The attorney is willing to risk no recompense for his efforts in return for the possibility of a windfall.").

■ As to the reasonableness of a contingent fee, "there can be no *per se* objection to contingent fees, so long as the fee was reasonable as of the time it was agreed to, rather than with the benefit of hindsight." Hazard, Hodes, & Jarvis, *supra,* § 8.6 (concluding that the ABA Standing Committee on Ethics and Professional Responsibility's opinion stating such was "eminently sound"). Indeed, another panel of this Court has said:

> It makes little sense to attempt a barn door closing after the fact. Scrutiny may only be reasonably made in consideration of the factors as they existed and as they were known at the time the contract was entered into. To require court approval of a contingent fee contract but countenance a second-guessing of that arrangement after the fact is to inject such a degree of uncertainty as to virtually destroy the underpinning necessity of the contingent fee contract in the first instance.... If the inquiry is made at the outset and before a contract

is signed, we acknowledge that many factors which bear upon the reasonableness of a contingent fee and upon the reasonableness of the particular percentage or percentages contemplated cannot be fully known. What may appear to be reasonable at the outset may appear to be unreasonable by reason of subsequent changes in circumstances or unforeseen and fortuitous events. Nevertheless, we do not propose that a contingent fee contract, once approved after due consideration, be re-examined by hindsight. To do so would be to encourage almost certain and endless second guessing in all contingent fee contract situations.

*Vollmar ex rel. Vollmar v. Rupright,* 517 N.E.2d 1240, 1244, 1245 (Ind.Ct.App.1988) (citations omitted). Admittedly, and as the City points out, *Vollmar* is unlike the present case both procedurally and substantively. Substantively, *Vollmar* dealt with a situation in which a trial court approved a contingent fee arrangement between a personal representative of an estate and the attorney he hired to pursue wrongful death actions. Procedurally, the argument on appeal was that the trial court erred in denying a petition to set aside the award of attorney's fees as being excessive. Although *Vollmar* can be distinguished from the present case, the same general proposition from *Vollmar* regarding contingent fees still applies: The factors used in determining the reasonableness of a contingent fee contract must be evaluated at the time it was entered into, and to hold that a contingent fee contract can be "re-examined by hindsight" would "encourage almost certain and endless second guessing in all contingent fee contract situations" and thus destroy the concept of contingent fee contracts.[6]

**6.** Hazard, Hodes, & Jarvis note that an attorney's assumption of the risk of nonrecovery

The City does not argue that the fee contract was unreasonable when it was entered into.[7] In fact, the fee contract negotiated by Fox & Cotner and Buchanan, the City Attorney, is presumed reasonable. It has been recognized that, as a general matter, a one-third contingent fee is a standard and customary fee in collection cases. *See Valparaiso Technical Inst.,* 676 N.E.2d at 421. Although the City highlights affidavits from attorneys involved in the dispute between the City and Georgetown stating that the $300,000 requested by Fox & Cotner is unreasonable and points to these affidavits and other designated evidence to persuade us that Fox & Cotner did not expend enough effort to justify such a high fee, we note that none of its evidence addresses the dispositive issue of whether the contingent

fee was unreasonable at the time the fee contract was entered into.[8] Without more, 20/20 hindsight is simply not enough to overcome the presumption that the contingent fee is reasonable. The trial court did not err.

Finally, the City argues that Fox & Corner is not entitled to the full $300,000 fee because the City paid for the services of Fifer and the City should not be responsible for two fees. In support, the City cites *Galanis v. Lyons & Truitt,* 715 N.E.2d 858 (Ind.1999). In *Galanis,* an attorney with a law firm worked on a personal injury case on a contingency basis for two and a half years before he was appointed as judge of a trial court and the client discharged the firm. *Id.* at 860. The client subsequently hired a new attorney on a contingency basis, and within four

---

does not justify every contingent fee. *Supra,* § 8.6. When an attorney "knows in advance that the contingency factor is negligible" or when an attorney's "effort bears virtually no relationship to the size of the recovery, resulting in a pure windfall," a contingent fee may not be reasonable. *Id.* Although we can envision a situation where an attorney barely puts forth any effort and yet receives a pure windfall, the present case is not such a situation. The designated evidence shows that, at a minimum, Fox & Cotner drafted and filed the original complaint, drafted internal memos discussing the City's claims, Georgetown's defenses, and the need to retain experts, pull records, and perform discovery, attended meetings with City officials regarding the case, and was present at the mediation.

7. Indiana Professional Conduct Rule 1.5(a) provides that the factors to be considered in determining the reasonableness of a fee include:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.

8. With regard to the portions of the attorney affidavits designated by the City that claim that "capital improvements were not an issue" when Fox & Cotner was first retained, Appellant's App. p. 270, 311, that the addition of capital improvement claims "substantially changed the nature of the litigation," *id.* at 300, that the "contingent nature of the relationship was limited to the unpaid sewer fees," *id.* at 353, and that the "capital improvement issue was a separate issue," *id.* at 458, we have already resolved that capital improvement claims were within the scope of Fox & Cotner's representation since the sewage contract addressed excess flow with either penalties or contributions towards capital improvements. Because we have thus concluded, these contentions are unpersuasive.

months, the client was successful at trial and a jury awarded her $250,000. *Id.* The case then settled for $200,000. *Id.* Our Supreme Court held that in the absence of an express written fee agreement providing otherwise,

(1) a lawyer retained under a contingent fee contract but discharged prior to the contingency is entitled to recover the value of services rendered if there is a subsequent settlement or award; (2) the fee is to be measured by the proportion of the total fee equal to the contribution of the discharged lawyer's efforts to the ultimate result; and (3) a subsequent lawyer under a contingent fee agreement who knew of the previous lawyer's representation is responsible for paying the predecessor's fee out of the subsequent lawyer's fee.

*Id.* The instant case is clearly distinguishable. Here, the City did not discharge Fox & Corner and then retain Fifer in its place. Instead, the City chose to retain Fifer on an hourly basis at the same time it was retaining Fox & Corner on a contingency basis. *Galanis* simply does not apply.

Affirmed.

BAILEY, J., and BRADFORD, J., concur.